Filed 6/3/15  P. v. Cox CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAVERT COX,<br><br>Defendant and Appellant. | F067171<br><br>(Super. Ct. No. 10CM8927)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Tracy Lum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

While serving a sentence of 15 years to life following a 1988 conviction, defendant Lavert Cox was alleged to have offered a bribe to an executive officer—a

correctional officer at Avenal State Prison.  Defendant was convicted following a jury trial.  He now appeals his conviction.

Defendant contends the trial court's refusal or failure to instruct the jury on the defense of entrapment violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution to adequate instructions on the theory of the defense, as well as his rights to a jury trial and due process of law.  He further argues the trial court erred by denying his motion made under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).  We will affirm.

## RELEVANT BACKGROUND

Correctional Officer Michael Ferree was approached by defendant in early 2010.  Defendant asked Ferree to remove certain documents from his central file in exchange for cash.  Ferree declined defendant's request and, believing defendant was just testing him as inmates are wont to do, he opted not to report the incident to his superiors.  In August 2010, defendant approached Ferree again about removing the documents from his central file in advance of a parole board hearing.  It then became apparent defendant was serious; Ferree reported the incident to the Investigative Services Unit (ISU).

Sergeant Robert Amaro with ISU provided Ferree with a recording device and asked Ferree to see if he could get a conversation with defendant recorded.  Ferree, assigned as a search and escort officer, called defendant's housing unit and asked that defendant be sent to the program office.  A recording of the conversation upon defendant's arrival was played for the jury.  A second recording of a subsequent conversation between Ferree and defendant, made the following day, was also played for the jury.  In the conversations, defendant offered Ferree $2,000 in order to remove certain documents from his file, providing Ferree with a list of the specific documents.  Defendant also offered and provided to Ferree four $100 bills as a downpayment.  The remainder of the money was to be paid in about two weeks' time.  After the recorded meetings, Ferree provided defendant's list and the cash to Amaro.

2.

Defendant testified to an entirely different scenario. He indicated Ferree was the initiating party, asking defendant if he wanted documents removed from his central file in order to improve his chances with the parole board. Defendant declined the assistance, but Ferree continued to approach him with the offer. Defendant found Ferree's contacts harassing and complained about it to his dorm mates. One of those inmates provided $400 to defendant so he could pay Ferree to leave him alone. Defendant denied paying Ferree a bribe. He also denied providing Ferree with a list of documents he wanted removed from his central file. Moreover, while defendant can be heard offering Ferree a gold chain and other jewelry as collateral or compensation for the remainder of the total payment discussed, defendant testified he never intended to pay Ferree any more money. It was just a way to get Ferree to leave him alone.

Following jury trial, defendant was found guilty of bribing an executive officer. (Pen. Code, § 67.)[1] In a bifurcated proceeding, the court found defendant's prior strike conviction to be true. Thereafter, defendant was sentenced to an eight-year term, to be served consecutive to the 15 years-to-life term he is currently serving. Defendant filed a timely notice of appeal.

## DISCUSSION

### 1. The Defense of Entrapment

Defendant contends the trial court erred by refusing to instruct the jury with CALCRIM No. 3408[2] because there was substantial evidence supporting the defense

---

[1]"Every person who gives or offers any bribe to any executive officer in this state, with intent to influence him in respect to any act, decision, vote, opinion, or other proceeding as such officer, is punishable by imprisonment in the state prison for two, three or four years …."

[2]"Entrapment is a defense. The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard from proof beyond a reasonable doubt. To meet this burden, the defendant must prove that it is more likely than not that (he/she) was entrapped.

"A person is entrapped if a law enforcement officer [or (his/her) agent] engaged in conduct that would cause a normally law-abiding person to commit the crime.

"Some examples of entrapment might include conduct like badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.

despite the trial court's ruling otherwise.  Plaintiff argues the trial court correctly denied defendant's request to instruct the jury on the defense of entrapment.  Further, even if error occurred, plaintiff asserts it was harmless.  We find any error to be harmless.

## A.  The Trial Court's Ruling

During a discussion regarding jury instructions, the following colloquy occurred:

> "[THE COURT]:  And I just want to make sure that everybody's clear that the defense of entrapment does not apply in this case, agreed?

> "[PROSECUTOR]:  I agree.

> "THE COURT:  Okay, [defense counsel]?  [¶] … [¶] … I can tell you that according to the testimony from [defendant] he denied making a bribe.  He's denied it.

> "[DEFENSE COUNSEL]:  Correct.

> "THE COURT:  So entrapment wouldn't apply.

---

"Another example of entrapment would be conduct that would make commission of the crime unusually attractive to a normally law-abiding person.  Such conduct might include a guarantee that the act is not illegal or that the offense would go undetected, an offer of extraordinary benefit, or other similar conduct.

"If an officer [or (his/her) agent] simply gave the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment.

"In evaluating this defense, you should focus primarily on the conduct of the officer.  However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances, including events that happened before the crime, the defendant's responses to the officer's urging, the seriousness of the crime, and how difficult it would have been for law enforcement officers to discover that the crime had been committed.

"When deciding whether the defendant was entrapped, consider what a normally law-abiding person would have done in this situation.  Do not consider the defendant's particular intentions or character, or whether the defendant had a predisposition to commit the crime.

"[As used here, an *agent* is a person who does something at the request, suggestion, or direction of an officer. It is not necessary that the agent know the officer's true identity, or that the agent realize that he or she is actually acting as an agent.]

"If the defendant has proved that it is more likely than not that (he/she) _____ *<insert charged crime, e.g., committed embezzlement>* because (he/she) was entrapped, you must find (him/her) not guilty of _____ *<insert charged crime>*."

4.

"[DEFENSE COUNSEL]: Um—

"THE COURT: He's actually saying that the Officer Ferree just lied.

"[DEFENSE COUNSEL]: Correct, that he was—and I don't know, I'd have to quickly look at the instructions, I don't know if it—if it's necessity or duress or any type of necessity or duress—

"THE COURT: Sure.

"[DEFENSE COUNSEL]: —instruction would apply. I would agree with the Court that the—that on the state of the evidence a—a entrapment defense probably instruction would not—would not be given.

"THE COURT: If you'll approach 3406 through 3408 includes some defense. So go ahead and look at those.

"(Brief pause in the proceedings.)

"THE COURT: Back on the record. Go ahead, [defense counsel].

"[DEFENSE COUNSEL]: Yes, your Honor, as to the charge conference in the jury instructions prior to my client testifying we did not discuss an entrapment defense. As I look at CAL CRIM 3408 the entrapment instruction, third paragraph states 'Some examples of entrapment might include conduct by badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.' Based on the defense evidence that was presented, I think badgering and repeated insistent requests would apply.

"Additionally, I guess another example of entrapment would be conduct that would make commission of a crime unusually attract[ive] to a normally law-abiding person.

"I think there's probably evidence, if the defendant's testimony is believed, that to put it I guess in regular terms, Ferree was trying to make him an offer he—he couldn't pass up which is hey, I'll help you out.

"But for that—for those reasons, your Honor, I do think—I would request an entrapment instruction."

The People opposed the giving of the instruction. Defense counsel argued further and the court ruled as follows:

"[DEFENSE COUNSEL]: Well, I mean I guess if the jury thinks that a bribery had occurred as Sergeant Amaro I think testified that he thought,

5.

you know, the crime occurred on September 1st or August 31st, and no time before that, you know, then—then—then that he was badgered or there was repeated or insistent requests for him to produce the money, I think would—that's the evidence and would be deserving of the entrapment defense, and with that I submit.

"THE COURT: All right. The Court is not going to allow the entrapment defense, the Court's of the belief that there was not substantial evidence presented by [defendant] to substantiate that jury instruction.

"Basically what [defendant] testified to was that, and believed, was that this Officer Ferree was harassing the defendant and requesting that the defendant pay him money so that he could delete documents from his file, however, [defendant] continually testified that—that he did not pay the money in order to bribe this officer but to leave him alone, and that's the only reason why he gave him the money is to have Officer Ferree leave him alone.

"So if the jury believes [defendant], he would not be guilty because he didn't bribe the officer, but it wouldn't be I'm not guilty because of entrapment."[3]

## B.    The Applicable Law

"'Entrapment' is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer. [Citation.]" (*People v. Strohl* (1976) 57 Cal.App.3d 347, 367.)

"In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.'" (*People v. Watson* (2000) 22 Cal.4th 220, 223.)

---

[3]We note a defendant may assert entrapment and still deny guilt. (*People v. Perez* (1965) 62 Cal.2d 769, 775-776; see Bench Notes to CALCRIM No. 3408.)

6.

A trial court is "required to instruct the … jury on the defense of entrapment if, but only if, substantial evidence supported the defense." (*People v. Watson*, *supra*, at pp. 222-223.)

Application of the entrapment defense depends upon whether "the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer." (*People v. Benford* (1959) 53 Cal.2d 1, 10.)

On appeal, the court reviews the record to determine whether substantial evidence supports the claimed defense to require the trial court to instruct regarding entrapment. (*People v. Federico* (2011) 191 Cal.App.4th 1418, 1422; *People v. Salas* (2006) 37 Cal.4th 967, 982.) And we review a claim of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

C.     Our Analysis

We need not decide whether the trial court erred in failing to instruct the jury pursuant to CALCRIM No. 3408 because even if error occurred, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Following a review of this record on appeal, it is obvious that the intent to commit the crime originated with defendant. (*People v. Benford*, *supra*, 53 Cal.2d at p. 10.)

A review of the recorded conversations plainly supports Ferree's testimony and would have only served to enhance Ferree's credibility. And although defendant claims Ferree's credibility was suspect due to a June 2009 incident wherein Ferree was found to have a cell phone on his person as he arrived at the state prison to begin work, the evidence very plainly revealed that on that occasion Ferree had inadvertently left his personal cell phone in a pocket of his uniform. Moreover, Ferree's testimony in that regard was corroborated by the testimony of Amaro.

Further, despite defendant's self-serving testimony that he was not offering a bribe to the officer in any manner and he was only trying to agree with Ferree so Ferree would leave him alone, defendant's own words in the recorded conversations can in no way be reasonably interpreted to support his version of the events. Read in context, it is plain the

7.

recordings corroborate Ferree's testimony in every way. The recordings also serve to directly contradict defendant's trial testimony.

For instance, during trial testimony, defendant denied providing Ferree with a list of documents he wished removed from his central file. Nevertheless, it is apparent from the recorded conversation that a document was provided to Ferree during the meeting of August 31, 2010:

> "FERREE: … What exactly is it, what do you [want] pulled out of the file?
>
> "COX: This right here.
>
> "FERREE: Damn.
>
> "COX: Cause see all that's pertaining to the uhm, the 115 …."

Additionally, defendant testified Ferree was "desperate himself" and "in desperation himself," apparently implying Ferree needed money and was thus harassing defendant about removing documents from his file in exchange for cash. And yet, in the recordings played for the jury, at one point defendant can be heard saying he was "on desperate measures at this time," referring to his own ongoing efforts to have certain documents removed from his central file ahead of his next parole board hearing. Lastly, defendant claimed during his testimony that he had never spoken to Ferree prior to August 31, 2010, about paying another officer money to remove documents from his central file.[4] However, throughout the first recorded conversation, defendant routinely admits to having previously paid another officer to remove documents from his central file, and it is clear Ferree and defendant have discussed the topic prior to the recorded conversation. Most significantly, it is defendant who brings up the topic of paying the other officer, without any prompting whatsoever. (*People v. Strohl*, *supra*, 57 Cal.App.3d at p. 368 [trier of fact may infer wrongful intent from defendant's words and conduct].)

---

[4]Amaro testified the investigation into the correctional officer identified by defendant was being handled by internal affairs, rather than the ISU.

Finally, although the court did not specifically instruct on the defense of entrapment, that defense was effectively encompassed in the court's other instructions. The court told the jury that in order to convict defendant of bribery of an executive officer, the prosecution had to prove beyond a reasonable doubt that defendant gave or offered a bribe to Ferree and "acted with the corrupt intent to unlawfully influence that officer's official act, decision, or conduct." It also instructed the jury that in order to find defendant guilty it must conclude he acted with specific intent to commit bribery. Thus, if, as defense counsel argued, defendant simply offered and provided money to Ferree as a way to get Ferree to stop harassing him, he would not be guilty of bribery.

In sum, even assuming the trial court should have instructed on entrapment, the error was harmless even if it can be said to have violated defendant's constitutional rights. (See *People v. Demetrulias* (2006) 39 Cal.4th 1, 23 [assuming standard of *Chapman v. California*, *supra*, 386 U.S. 18 applies]; *People v. Manriquez*, *supra*, 37 Cal.4th at p. 588.) If jurors had believed defendant's version of events—which constituted the only possible evidence supportive of an entrapment defense—they would have acquitted him of the offense. The jury's verdict finding defendant guilty of Penal Code section 67 constitutes an implicit rejection of his version of events, thus eliminating any doubt the jury would have returned the same verdict had it been instructed on the defense of entrapment. (*People v. Demetrulias*, *supra*, at p. 24; *People v. Manriquez*, *supra*, at p. 588.) Because there is overwhelming admissible evidence in the record, including recorded conversations plainly establishing defendant offered to bribe Ferree, we conclude any purported error in failing to instruct the jury regarding the defense of entrapment was harmless beyond a reasonable doubt.

## 2.    The Denial of Defendant's *Pitchess* Motion

Defendant complains the court erred when it denied his *Pitchess* motion without conducting an in camera review. We do not agree.

Defendant filed a motion seeking an order from the court to permit review of Ferree's personnel records. Real party in interest, the California Department of

Corrections and Rehabilitation, opposed the motion. The court denied the motion, finding as follows:

> "All right, the Court finds that the affidavit has failed to articulate a specific factual scenario establishing a plausible factual foundation for the allegations of misconduct and the Pitchess motion will be denied."

Pursuant to *Pitchess*, *supra*, 11 Cal.3d at pages 537-538, a defendant is entitled to discovery of an officer's confidential personnel records if those files contain information that is potentially relevant to the defense. (See Evid. Code, §§ 1043–1045.) To exercise this right, a defendant must file a motion demonstrating good cause for the discovery which, if granted, results first in an in camera court review of the records and subsequent disclosure to the defendant of information "relevant to the subject matter involved in the pending litigation." (Evid. Code, § 1045, subd. (a).)

Establishing "good cause" requires the defendant to demonstrate a "specific factual scenario" that establishes a "plausible factual foundation" for the allegations of officer misconduct. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85-86.) A factual scenario is "plausible" if it is one that "might or could have occurred." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1026.)

Assertions in the affidavits "may be on information and belief and need not be based on personal knowledge [citation], but the information sought must be requested with sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information [citation]." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) As such, "a declaration by counsel on information and belief is sufficient to state facts to satisfy the 'materiality' component of that section. [Citation.]" (*Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 51.)

The trial court has broad discretion in ruling on both the good cause and disclosure components of a *Pitchess* motion, and its ruling will not be disturbed absent an abuse of that discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086; *People v. Hughes* (2002) 27 Cal.4th 287, 330.)

10.

Defendant contends he established good cause based on "Ferree's admitted and documented incidents of violating prison regulations and omitting relevant facts from reports." He argues that entitled him to an in camera review of Ferree's personnel records concerning any discipline, complaint, or investigation "which related to violations of departmental policy, planting evidence, fabricating reports and/or falsifying evidence."

Plaintiff argues the trial court properly exercised its discretion when it denied defendant's motion because defendant, as the court found, "failed to present a plausible and specific factual scenario of officer misconduct."

Specifically, on information and belief, defense counsel's declaration stated the following, in relevant part:

> "7. Good cause exists for the disclosure of the discovery sought and the information sought is material to the subject matter of the pending litigation because an issue at trial in this case will be whether Officer Ferree was engaged in misconduct while employed as a correctional officer at Avenal State Prison and whether as a part of that misconduct he initiated all contact between himself and defendant …, solicited defendant …, and induced defendant … into allegedly committing the bribery;

> "8. Good cause and materiality further exist because the credibility of Officer Ferree will be an issue at trial in this case;

> "9. The above-listed materials are necessary for the proper preparation of this case for trial. The materials may be used to locate and investigate witnesses and other evidence to show a tendency or propensity on the part of Officer Ferree to violate departmental policy, plant evidence, fabricate reports and/or falsify evidence, and to show that Officer Ferree acted in conformity with that character at the time of this incident."

While defendant is correct that a low threshold is required to demonstrate good cause for an in camera review of an officer's personnel files, he failed to meet even that minimal level in presenting a "specific factual scenario of officer misconduct." (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1025; see, e.g., *People v. Collins* (2004) 115 Cal.App.4th 137, 151 [affirming denial of *Pitchess* motion without in camera review where "defendant's declaration merely made general allegations of misconduct against

11.

(the officers) without alleging any facts that provided reason to believe the misconduct had occurred"].)

> "To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation. The court does that through the following inquiry: Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense …? Under what theory would the requested information be admissible at trial? If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, and states 'upon reasonable belief that the governmental agency identified has the records or information from the records' [citation], then the defendant has shown good cause for discovery and in-chambers review of potentially relevant personnel records of the police officer accused of misconduct against the defendant." (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at pp. 1026-1027.)

Exhibit A to defendant's *Pitchess* motion plainly reveals Ferree's having entered Avenal State Prison in possession of his personal cell phone prior to the start of his shift was an inadvertent act. Further, it reveals no adverse action was taken against Ferree for that unintentional behavior. Exhibit B to defendant's motion is Ferree's incident report concerning the alleged bribe. Ferree acknowledged he was approached by defendant for the same purpose some eight months prior to the crime alleged. Ferree noted he did not report that incident because he believed defendant "was just trying to test" him, and he had not taken defendant's conduct seriously.

An officer's unintentional mistake of bringing his personal cell phone onto prison grounds, coupled with that officer's election not to report a prior request by defendant to remove documents from defendant's central file in exchange for cash because the officer did not believe the request was sincere, in no way established a connection between the proposed discovery and a defense to the charge alleged. Defendant's declaration failed to explain how an inadvertent error and a reasonable exercise of discretion regarding whether to report certain expected inmate behavior amounted to officer misconduct and

12.

good cause.  Defendant simply did not demonstrate a logical connection between the information he sought and the proposed defense to the charges.

Thus, we find the trial court did not abuse its discretion in denying defendant's motion.

**DISPOSITION**

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
KANE, Acting P.J.



_____
POOCHIGIAN, J.

13.