91 Cal.Rptr.2d 822 (2000)
22 Cal.4th 220
990 P.2d 1031
The PEOPLE, Plaintiff and Respondent,
v.
Tray Edward WATSON, Defendant and Appellant.
No. S078207.
Supreme Court of California.
January 20, 2000.
*823 Linda J. Zachritz, under appointment by the Supreme Court, Fresno, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, Harry Jospeh Colombo and Mark A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.
CHIN, J.
One March evening in 1997, Bakersfield police officers conducted a vehicle theft "sting" operation. They staged an arrest of a plainclothes police officer driving a black 1980 Chevrolet Monte Carlo that belonged to the police department. The arresting officers activated the emergency lights and siren of their marked patrol car and stopped the Monte Carlo. The Monte Carlo's driver drove into a parking lot and parked. While a group of spectators watched, a uniformed police officer approached the Monte Carlo, ordered the driver out, patted him down, handcuffed him, placed him in the back seat of the patrol car, and drove away, leaving the Monte Carlo behind. The police left the Monte Carlo unlocked with the keys in the ignition to make it easier to take. They wanted to "give the impression [the driver] was arrested and the vehicle was left there."
A couple of hours later, police arrested defendant after he drove the Monte Carlo from the parking lot. He told the arresting officer that his niece had informed him of the earlier apparent arrest and told him to "come and take" the car. He did just that, intending to use it to "roll," i.e., to drive it.
Defendant was charged with taking a vehicle. (Veh.Code, § 10851, subd. (a).) At the first trial, the court instructed the jury on entrapment. The jury was unable to reach a verdict, and the court declared a mistrial. At the second trial, the court refused to instruct on entrapment, finding insufficient evidence to support the defense. The jury found defendant guilty. The Court of Appeal reversed the judgment, finding the trial court should have instructed on entrapment. We granted review.
The trial court was required to instruct the second jury on the defense of entrapment if, but only if, substantial evidence supported the defense. (People v. Flannel (1979) 25 Cal.3d 668, 685, 160 Cal.Rptr. 84, 603 P.2d 1; People v. Barraza (1979) 23 Cal.3d 675, 691, 153 Cal. Rptr. 459, 591 P.2d 947 (Barraza).) In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a normally law-abiding person to commit the offense. (Barraza, supra, 23 Cal.3d at pp. 689-690, 153 Cal.Rptr. 459, 591 P.2d 947.) "[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspectfor example, a decoy programis therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (Id. at p. 690, 153 Cal.Rptr. 459, 591 P.2d 947.)
The Barraza court described two guiding principles. "First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal *824 intent, entrapment will be established." (Barraza, supra, 23 Cal.3d at p. 690, 153 Cal.Rptr. 459, 591 P.2d 947.) Defendant does not rely on this principle. He does not claim his motive in taking the car was other than ordinary criminal intent. Instead, he relies on the second principle: "Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (Ibid.)
Citing this second principle, the Court of Appeal concluded this case warranted an entrapment instruction because the jury might have found that "the police made taking the car unusually attractive" by sending the message, "`You can take this car and get away with it.'" Such a message, the Court of Appeal concluded, might constitute "any similar enticement" under Barraza, supra, 23 Cal.3d at page 690, 153 Cal.Rptr. 459, 591 P.2d 947. We disagree. The Barraza language must be considered in its context. Barraza involved communications directly between the law enforcement agent and the defendant. (Id. at p. 681, 153 Cal.Rptr. 459, 591 P.2d 947.) Normally, police conduct must be directed at a specific person or persons to constitute entrapment. The police must "pressure the suspect by overbearing conduct...." (Id. at p. 690, 153 Cal.Rptr. 459, 591 P.2d 947.) Except perhaps in extreme circumstances, the second Barraza principle is limited to instances of individual, personal enticement, excluding communications made to the world at large. Merely providing people in general an opportunity to commit a crime is not an improper enticement or otherwise entrapment. "[T]he rule is clear that `ruses, stings, and decoys are permissible stratagems in the enforcement of criminal law, and they become invalid only when badgering or importuning takes place to an extent and degree that is likely to induce an otherwise law-abiding person to commit a crime.'" (Provigo Corp. v. Alcoholic Beverage Control Appeals Bd. (1994) 7 Cal.4th 561, 569, 28 Cal.Rptr.2d 638, 869 P.2d 1163.)
The sting operation in this case presents no evidence of entrapment, both because the police did not specifically intend it as a communication to defendant personally, and because it did not actually guarantee anything, but merely conveyed the idea detection was unlikely. The police did nothing more than present to the general community a tempting opportunity to take the Monte Carlo. Some persons, obviously including defendant, might have found the temptation hard to resist. But a person who steals when given the opportunity is an opportunistic thief, not a normally law-abiding person. Specifically, normally law-abiding persons do not take a car not belonging to them merely because it is unlocked with the keys in the ignition and it appears they will not be caught. Defendant presented no evidence of any personal contact whatever between police and himself; certainly he could not show that the police cajoled him, gave him any enticement or guarantee, or even knew or cared who he was.
Defendant argues the jury might have found that the police used his niece as an unwitting agent to entrap him. (See People v. McIntire (1979) 23 Cal.3d 742, 747-748, 153 Cal.Rptr. 237, 591 P.2d 527.) However, no more evidence of contact between the police and the niece existed than evidence of contact between the police and defendant.
Justice Mosk argues that "next we may anticipate arranging for a homeowner to leave his front door open all night to attract a burglar. Or a bank to leave a signed check on the counter to attract a forger. Or leaving a loaded gun on a park bench to attract a potential robber." (Cone, opn., post, 91 Cal.Rptr.2d at p. 825, 990 P.2d at p. 1034.) A big difference exists, however, between the police risking *825 their own property in tightly controlled circumstances and asking the public to do the same (or, in the loaded gun hypothetical, to invite violence) in uncontrolled circumstances. Moreover, the police might reasonably believe that sting operations like this deter, not encourage, crime. For example, once word of this case circulated in the community, future would-be car thieves might hesitate before taking advantage of what appears to be an easy target.
The trial court correctly refused to instruct the second jury on entrapment. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with our opinion.
GEORGE, C.J., KENNARD, J., BAXTER, J., WERDEGAR, J., and BROWN, J., concur.
Concurring Opinion by MOSK, J.
I concur in the judgment.
I concede that the result that the majority opinion reaches is sound under the law.
But I cannot resist expressing my reservations about the morality of the conduct by the police.
It is a primary function of a law enforcement agency not only to investigate the commission of crimes but also to prevent their commission in the first place, certainly not to encourage them. Members of the public are persuaded to lock their motor vehicles and to remove the keys therefrom. The police acted to the contrary here and thus deliberately encouraged commission of a crime. The defendant, so motivated, accommodated them.
If leaving the keys in an open motor vehicle is sound law enforcement, then next we may anticipate arranging for a homeowner to leave his front door open all night to attract a burglar. Or a bank to leave a signed check on the counter to attract a forger. Or leaving a loaded gun on a park bench to attract a potential robber. Police may thus apprehend more criminals. But there will be more crimes.
In a strange rebuttal, the majority opinion refers to the police "risking their own property." (Maj. opn., ante, 91 Cal. Rptr.2d at pp. 824-825, 990 P.2d at p. 1033.) The fact, of course, is that police possess and use public property and must act with that in mind.
My preference is for law enforcement agencies to take steps to make the commission of crimes impossible, or at least more difficult, rather than simpler. Admittedly there are potential criminals in our midst, and weak-willed persons who will take advantage of criminal opportunity. I would prefer discouraging them rather than devising techniques to make their task easier.[1]
NOTES
[1] This concern is not new. Over three decades ago Karl Menninger declared that police are "caught in an obsolete, ineffective, crime-breeding  rather than crime-preventing  system...." (Menninger, The Crime of Punishment (1968) p. 34.)