[No. E048833. Fourth Dist., Div. Two. Jan. 21, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH GENE FEDERICO, Defendant and Appellant.

## COUNSEL

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Teresa Torreblanca, Donald W. Ostertag and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Following a jury trial, defendant and appellant Joseph Gene Federico was convicted of attempting to commit a lewd act with a child under the age of 14 (Pen. Code,[1] §§ 288, subd. (a), 664; count 1) and attempting to send harmful matter to a minor with the intent of seducing the minor (§§ 288.2, subd. (b), 664; count 2). Defendant admitted he had a prior strike conviction for manslaughter with the use of a firearm (§ 192) within the meaning of sections 667, subdivisions (c) and (e)(1) and 1170.12, subdivision (c)(1). He was sentenced to prison for a total term of six years eight months. He appeals.

## I. PROCEDURAL BACKGROUND AND FACTS

In January 2006, the Riverside County Sheriff's Department conducted a sting operation in Mira Loma aimed at catching a sexual predator who was preying on a young girl through the Internet. The sheriff's department was contacted by Perverted Justice.[2] Perverted Justice volunteers pose on the Internet as children and wait for adults who are soliciting sexual activity from children to contact them.

Beginning the first week of December 2005, a volunteer of Perverted Justice, Susan Elder (Elder), posed as a young girl, "Missie," with a profile set up under the screen name "Missie_prissie93." The profile included a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Perverted Justice is "a forum that brings to light what's going [on] with the Internet and what it does to today's kids."

picture of Missie and stated her age as being 12. Defendant, who had a profile with the screen name "Hunglowilove69" viewed Missie's profile and initiated contact with her on the night of January 5, 2006. The two chatted for about three hours, into the morning of January 6.

In a short period of time, the conversation turned sexual. Although Missie identified herself at the outset as a 12-year-old girl, defendant showed her a picture of his penis, which was on his profile. Defendant asked detailed questions about Missie's prior sexual experiences and stated he would "teach" her and "do all kinds of things" with her. When Missie expressed worry because she had heard sex was painful, defendant assured her he was "very gentle." Missie told defendant she would be alone at her house over the weekend and gave him her Mira Loma address. Defendant was living in Orange County.

As the two were chatting, defendant decided he would masturbate for Missie on his Webcam. As he did, he instructed Missie to touch herself and gave her instructions on where her clitoris was located. Defendant asked Missie: "did u think ur 1st cock would be so big?" He also informed Missie he was going to ejaculate into her mouth and instructed her that she would have to swallow his ejaculate. Defendant arranged a time to visit Missie later, and asked that she answer the door wearing only her bra and underpants.

When defendant arrived at the house, there were police officers waiting for him and he was arrested. Defendant had two vibrating dildos in his car, along with printed directions to the address which Missie had provided.

The only witness for the defense was defendant's ex-girlfriend, who testified that she owned the vibrating dildos. She stated that defendant was supposed to be bringing them to her the night of his arrest.

## II. FAILURE TO INSTRUCT ON ENTRAPMENT DEFENSE

Defendant asked that the jury be instructed according to CALCRIM No. 3408 on the defense of entrapment. The trial court denied the request on the grounds that (1) Perverted Justice is not an agent of law enforcement and the defense applies only when law enforcement or its agent engages in the conduct that induces the defendant to act, and (2) the evidence did not warrant giving the instruction. Defendant challenges the trial court's ruling,

contending his federal and state constitutional rights to due process and to trial by jury were violated.

## A. *Standard of Review*

A trial court is "required to instruct the . . . jury on the defense of entrapment if, but only if, substantial evidence supported the defense. [Citations.]" (*People v. Watson* (2000) 22 Cal.4th 220, 222–223 [91 Cal.Rptr.2d 822, 990 P.2d 1031].) We review the record to determine whether defendant presented substantial evidence to support the claimed defense and thus require the trial court to give the jury the entrapment jury instruction. (*People v. McIntire* (1979) 23 Cal.3d 742, 746 [153 Cal.Rptr. 237, 591 P.2d 527]; *People v. Salas* (2006) 37 Cal.4th 967, 983 [38 Cal.Rptr.3d 624, 127 P.3d 40].)

## B. *Analysis*

■ "In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.' [Citation.]" (*People v. Watson, supra*, 22 Cal.4th at p. 223, quoting *People v. Barraza* (1979) 23 Cal.3d 675, 689–690 [3 Cal.Rptr. 459, 591 P.2d 947] (*Barraza*).)

"The *Barraza* court described two guiding principles. 'First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established.' [Citation.]" (*People v. Watson, supra*, 22 Cal.4th at p. 223.) " 'Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement.' [Citation.]" (*Id.* at p. 223.)

Here, the trial court denied defendant's request to instruct the jury on entrapment because there was no evidence to show Perverted Justice acted as an agent of law enforcement, and even if Perverted Justice had acted as an agent of law enforcement, there was no evidence to support the instruction. We agree with the trial court.

On the question of whether Perverted Justice or Elder acted as an agent of law enforcement, the evidence shows that law enforcement officers participated in the sting operation by arresting defendant when he arrived at the house in Mira Loma. Such evidence is insufficient to show Perverted Justice or Elder acted as an agent of law enforcement. Rather, sufficient evidence required a showing that Elder acted "at the request, suggestion, or direction" of law enforcement. (See CALCRIM No. 3408 (2009–2010 ed.).) Here, Elder acted at the direction of Perverted Justice. As the trial court observed, "[T]he Riverside Sheriff's Department was brought into the sting only at the end, after the chats had been completed. It is clear that Perverted Justice is committed to monitoring the Internet and would continue its efforts to do so, whether law enforcement came to the sting operation or not . . . ."

Even if we assume Perverted Justice and Elder were acting as agents of law enforcement, there was no evidence of entrapment. Elder posed as a 12-year-old girl on the Internet. Defendant initiated contact with her, and after telling her that he was 21,[3] she told him that she was 12. He asked whether she had a picture he could see, and she responded by asking him for a picture. Defendant directed her to his profile, which contained a picture of his penis. He then said if she was not "turned off[,] good." He asked if she was "into guys." She replied that she was and asked if he liked girls. He said he did, but that he might be a little advanced for her. She replied that he had asked her, and that she was not a baby. Defendant apologized and said he just did not know how far she was willing to go. She admitted she had not "done much," and he asked what she had done. After she said she had a boyfriend, he asked if she had touched his penis and played with it. He continued to ask about her experience, and when she said she was looking for a real boyfriend, he admitted that he wanted to teach her, but because of his age, he would have to meet her in private, because "if it were a date in public id [*sic*] get arrested." When he said he was 31, she indicated she did not have a problem with his age. He asked how she felt about oral sex, and she asked if it hurt. He told her it does not hurt if her mouth is big enough for his penis. Although defendant claims that Elder "encouraged the sexual nature of the conversation," the fact is, he continued to solicit her responses by asking sexual questions. When Elder mentioned she had to go offline for awhile to make her mother think she was going to bed, defendant stated that if she wanted to

---

[3] Later defendant says that he is 31.

meet him, he needed her address. Upon finding out when her mother would be gone, he told her to put a flower on the door if "all is clear."

 Despite the above, defendant contends it was Elder who first brought up the subject of meeting by volunteering that she would often be home alone. We disagree. Defendant is the one who told Elder that he would have to meet her in private because of his age. As the People point out, "[n]o normally law-abiding person over the age of 18 would rush over to spend time with a 12-year-old girl." Defendant initiated contact with a 12-year-old girl on the Internet, showing her a picture of his penis to find out how she would react. Once he confirmed she was not turned off by the pictures, he began a conversation about sex and her experience. Defendant had her watch him masturbate and told her about what he wanted to do to her. Elder merely provided an opportunity for defendant to spend time alone with a 12-year-old girl in an empty house. There was no entrapment. (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 568–570 [28 Cal.Rptr.2d 638, 869 P.2d 1163] [use of underage, but mature-looking, decoys to expose unlawful sales of alcoholic beverages to minors is not entrapment; no pressure or overbearing conduct has occurred, and targets could have protected themselves by routinely checking customer identifications].)[4] Consequently, we must conclude the trial court properly denied defendant's request to instruct on that defense.

### III. JURISDICTION OVER COUNT TWO AND DEFENDANT

On August 2, 2006, the Riverside County District Attorney filed an information charging defendant with crimes committed on January 6, 2006. On March 11, 2009, during trial, defendant moved to dismiss count 2 (§ 288.2 [attempting to send harmful matter to a minor with the intent of seducing the minor]) on the ground that the Riverside County Superior Court did not have jurisdiction because the crime occurred in Orange County. In response, the prosecution argued that section 784.7, subdivision (a) allowed the crimes to

---

[4] Defendant's reliance on *Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091, 1096–1098 (*Bradley*) and *U.S. v. Poehlman* (9th Cir. 2000) 217 F.3d 692, 698–705 (*Poehlman*) is misplaced. First, Ninth Circuit cases are not binding on this court. (*Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52 [83 Cal.Rptr.2d 590].) Second, the cases are distinguishable. In *Bradley*, the police used a drug addict going through withdrawal to obtain drugs from the defendant. (*Bradley, supra,* at p. 1095.) The court found the drug addict was a sympathetic decoy because of his physical suffering. (*Id.* at p. 1096.) In *Poehlman*, a government agent posed as a mother looking for a "special man teacher" for her children. The court found entrapment because the defendant had no predisposition to pedophilia; however, after developing a relationship with the mother, he had acquiesced to her requests from fear of being rejected and losing her companionship. (*Poehlman, supra,* pp. 698–705.)

be tried together in Riverside County with the agreement of the Orange County District Attorney. The prosecutor provided the consent letter from the Orange County District Attorney dated March 11, 2009. The trial court denied defendant's motion.

On appeal, defendant challenges the trial court's ruling. He contends the trial court misunderstood the issue he was raising. Specifically, defendant claims that "[t]he question before the trial court and this court is whether the district attorney of one county can transfer the venue over a criminal charge to another county for purposes of . . . section 784.7, subdivision (a), when the statute of limitations has expired for filing that charge in the original (transferring) county." We conclude section 784.7[5] is inapplicable and that defendant misunderstands the nature of proper venue.

Determining the proper venue presents an issue of law. (*People v. Posey* (2004) 32 Cal.4th 193, 201 [8 Cal.Rptr.3d 551, 82 P.3d 755].) Accordingly, we apply the de novo standard of review. (*People v. Galvan* (2008) 168 Cal.App.4th 846, 852 [85 Cal.Rptr.3d 776] [Fourth Dist., Div. Two].)

■ "Traditionally, venue in a criminal proceeding has been set, as a general matter, in the county or judicial district in which the crime was committed. Under the provisions of . . . section 777, that continues to be the general rule in California. That statute provides in part: '[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed.' " (*People v. Simon* (2001) 25 Cal.4th 1082, 1093–1094 [108 Cal.Rptr.2d 385, 25 P.3d 598], fns. omitted.) Accordingly, "under section 777 the county in which a felony was committed is, in the absence of another statute, the locale designated as the place for trial." (*Id.* at p. 1094.) "[U]nder section 781, when a crime is committed partly in one county and partly in another county, or when the acts or effects constituting the crime or requisite to its commission occur in more than one county, venue is in the superior court in each of the counties in question, and a defendant may be tried in any of them. [Citations.]" (*People v. Posey, supra,* 32 Cal.4th at pp. 199–200.)[6]

---

[5] "When more than one violation of Section 220, except assault with intent to commit mayhem, 261, 262, 264.1, 269, 286, 288, 288a, 288.5, or 289 occurs in more than one jurisdictional territory, the jurisdiction of any of those offenses, and for any offenses properly joinable with that offense, is in any jurisdiction where at least one of the offenses occurred, subject to a hearing, pursuant to Section 954, within the jurisdiction of the proposed trial. At the Section 954 hearing, the prosecution shall present evidence in writing that all district attorneys in counties with jurisdiction of the offenses agree to the venue. Charged offenses from jurisdictions where there is no written agreement from the district attorney shall be returned to that jurisdiction." (§ 784.7, subd. (a).)

[6] During oral argument, defense counsel argued that, because defendant was charged with *attempting* to send harmful matter to a minor with the intent of seducing the minor (§§ 288.2,

Here, defendant was charged with attempting to violate section 288.2 as a result of his sending to Missie a picture of his penis and a streaming video of him masturbating via the Internet. At the time he did this, he was in Orange County, while Missie was in Riverside County. Pursuant to section 777, the offense occurred in more than one county. Thus, venue lay in either Orange or Riverside County.

Defendant's reference to section 784.7 is a red herring. Nonetheless, if we consider his argument, we reject it for the following reasons. First, section 288.2 is not identified as one of the listed sex crimes. Second, defendant's interpretation of section 784.7 is inconsistent with its purpose, which is "to permit offenses occurring in different counties to be consolidated so that a victim may be spared having to testify in multiple trials in different counties." (*People v. Betts* (2005) 34 Cal.4th 1039, 1059 & fn. 15 [23 Cal.Rptr.3d 138, 103 P.3d 883]; see *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1055 [108 Cal.Rptr.2d 409, 25 P.3d 618].) Third, we agree with our colleagues in Division Three of this district. Section 784.7, subdivision (a), provides that Riverside County "has jurisdiction 'subject to a hearing, pursuant to Section 954,' at which the prosecutor must produce evidence of a written venue agreement. [Citation.] Section 784.7 grants jurisdiction pending the section 954 hearing; it does not withhold jurisdiction until that hearing. And if section 784.7 were ambiguous on this point, we would harmonize it with other statutes and avoid absurd results. [Citation.] It would be absurd to require prosecutors to file written venue agreements when prosecutions commence— i.e., at the same time they file criminal complaints, or as soon as the court issues arrest warrants. [Citations.]" (*People v. Delgado* (2010) 181 Cal.App.4th 839, 851 [104 Cal.Rptr.3d 495].) And finally, the fact that charges were filed in Riverside County within the statutory period tolled the running of any applicable statute of limitations for purposes of determining proper jurisdiction under section 784.7. Clearly, when the charges were filed, both counties had jurisdiction. That the case proceeded in Riverside County suggests Orange County implicitly agreed to venue in Riverside County. To require either county to obtain consent from the other county at the same time of filing a criminal complaint, or as soon as the court issues an arrest warrant, would impose a condition precedent not statutorily required. Moreover, to allow defendant to sit and wait for the statute of limitations to run before raising the issue of whether Orange County agreed to venue in Riverside County would allow him a "get out of jail free" card.

---

subd. (b), 664), Orange County was the proper jurisdiction because the *attempt* to send the materials occurred in Orange County. We disagree. As the People pointed out, the only reason defendant was charged with an attempt was that Missie was not who defendant thought she was, namely, a minor.

## IV. DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 2011, S191123.