Filed 6/9/15  P. v. Munoz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS MIGUEL MUNOZ,<br><br>    Defendant and Appellant. | F067334<br><br>(Super. Ct. No. CRM021350)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Franson, J. and Peña, J.

A jury found appellant, Luis Miguel Munoz, guilty of contacting a minor with intent to commit a sexual offense (Pen. Code, § 288.3, subd. (a)),[1] and attending an arranged illicit meeting with a minor (§ 288.4, subd. (b)).

Appellant was sentenced to serve nine months in jail and was credited with 116 days.  The trial court further sentenced him to three years in state prison but suspended execution of the sentence and instead placed him on 60 months of felony probation.

On appeal, appellant contends the trial court violated his federal and constitutional rights to due process when it refused to instruct the jury on the affirmative defense of entrapment, requiring reversal of his conviction.  We affirm.

### STATEMENT OF THE FACTS

*Testimony of Detective Dabney*

On January 5, 2012, Detective Dabney of the Central California Internet Crimes Against Children Task Force (ICAC) began a proactive internet investigation on Craigslist[2] to identify male sexual predators seeking contact with young girls.   A particular section on Craigslist, "Casual Encounters," was targeted because past investigations indicated it was a common site men use when seeking women. Appellant's particular advertisement caught Dabney's attention.  The posting stated "How much would you charge for the panties you are wearing?"   There was no indication that appellant was seeking panties from a juvenile.[3]   Posing as a 13-year-old girl with a screen name "Chavalita," Dabney responded to the ad by email.  Chavalita said she had panties if appellant wanted to buy them.   She told appellant she was 13 years old and needed the money.   She also offered to sell her mother's panties, who she

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     Craigslist is an open-forum website that allows people to submit requests to buy or sell things, and also includes a section where men can seek women.

[3]     Detective Dabney explained that appellant's ad caught his attention because it did not specify any particular age.

2.

said was 30. Appellant responded that he was interested in the mother's panties and would pay $40 for them.

Their next communication occurred approximately a week later on January 14. Detective Dabney, as Chavalita, initiated the conversation by asking if appellant was really going to buy them and asked if he lived in Merced. The next day, appellant responded, stating that he was 22 years old, he did live in Merced, and he asked how much she wanted for the underwear. He also suggested that they should "meet up or hang out."

On January 16, the correspondence continued over Yahoo Messenger,[4] and appellant asked specifically for Chavalita's panties, not her mother's. Detective Dabney reiterated the fictitious girl's age as 13. Appellant said he was "cool with that." The possibility of purchasing the mother's underwear was never brought up again by either party. The internet chatting continued on and off again over the next two weeks. Each time there was a lull in communications for a few days, Detective Dabney would eventually reach out to appellant over Yahoo Messenger.

The January conversations were primarily concerned with appellant wanting to acquire a pair of Chavalita's panties, but the content of the messages also became more sexual. Appellant frequently asked Chavalita if she wanted to "meet up" or "hang out," and offering to wait to meet her at a nearby McDonald's. He asked her to describe her underwear, and later told her to get her "panties dirty for me." During one conversation Detective Dabney, acting as Chavalita, asked "What do you want? Me?" Appellant replied "Ahh, that's what's up." At another point Chavalita told appellant that he was "making [her] hot."

---

**4** Yahoo Messenger is an online instant messenger service that allows users to send messages through a server and "chat" with others.

3.

There was another lull in communications until February 7, when Detective Dabney again initiated online communications. Appellant continued to push for a pair of Chavalita's underwear and to see her. Appellant offered $20 to $40 for them and asked if she wanted anything else, stating "I'll hook you up with anything you want." Chavalita agreed to leave a pair of panties at a designated location for appellant to pick up. Detective Dabney purchased some girls' underwear, left them in a brown paper bag in a park, and then told appellant where to find them. Detective Dabney arranged to have surveillance in the park, which observed appellant picking up the bag.

That same night, conversations between appellant and Chavalita began again and the sexual nature of the conversations escalated. Appellant said he was happy with the pair that she gave him and said "I wish I could have taken them off of you." Chavalita responded "Well, maybe you can." Then appellant talked about wanting to engage in oral sex with Chavalita. She told appellant that she was virgin and appellant said, "Maybe I can pop that cherry of yours."

On February 9, Detective Dabney reached out to appellant again. Appellant offered payment for the panties and also discussed in detail his desire to have sexual relations with Chavalita. She responded that she was nervous about meeting but also excited. They discussed meeting in a place where she would feel comfortable. Chavalita reiterated that she was only 13. Appellant said he would treat her well but if she was uncomfortable he would leave. He said he had not been with a girl her age before, and he also said they would have to be careful because he could "get locked up" if caught. Chavalita said their meeting would be "our secret." They agreed to meet the next day after Chavalita finished school, and she told him to bring condoms.

The next day, appellant suggested that they meet at a McDonald's. Chavalita indicated that she was not able to meet right after school but had left another bag of panties for appellant in the same location as before. Police surveillance observed appellant pick up the bag and noted his car's license plate number. Detective Dabney

4.

received a message confirming that appellant had picked up the bag. Shortly thereafter, police arrested appellant. He had condoms and both pairs of underwear with him.

*Testimony of Appellant*

Appellant has a fetish for women's underwear but never had sexual conversations with or fantasized about underage girls before his encounter with Chavalita. He testified that when he posted his initial ad for underwear on Craigslist, he was not seeking a response from underage girls. He testified that when Chavalita responded and told him she was 13 he was uncomfortable at first, but as the conversations continued he became "all right with it." He proposed meeting with Chavalita only for the purpose of acquiring the underwear he wanted. Although Chavalita offered to sell him the underwear of an adult, he testified that he did not pursue that offer because Chavalita was the one who responded to his ad.

After retrieving the panties that appellant believed Chavalita left for him in the park, he admitted that having them made him feel aroused "[b]ecause she had gave [*sic*] me what I wanted." He testified that he continued the conversations with Chavalita because she kept communicating with him. He also testified that, despite knowledge of Chavalita's age, he engaged in the overtly sexual conversations with her because she put the ideas in his head and led him to believe it was all right.

On the day appellant expected to meet Chavalita, he brought condoms because she told him to bring protection. He testified that he was planning to engage in some sort of sexual activity with her but also expected that he would not go through with it upon seeing her because of her age. He testified that he does not believe a 13-year-old can consent to sexual activity and that it is wrong to discuss or engage in sexual activity with someone that age. Finally, he admitted that he was the one to mention specific sexual activities he wanted to perform with Chavalita.

**DISCUSSION**

*Standard of Review*

5.

A defendant is entitled to an entrapment instruction "if, but only if, substantial evidence supported the defense." (*People v. Watson* (2000) 22 Cal.4th 220, 222 (*Watson*).)  Any doubts as to sufficiency of the evidence warranting the instruction are resolved in favor of the defendant.  (*Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091, 1096 (*Bradley*).)  Thus, failure to give instructions on entrapment constitutes reversible error when substantial evidence to sustain the defense is offered.  (19 Cal. Jur. 3d (2015) Criminal Law: Defenses, § 36.)  We review the record to determine whether appellant presented substantial evidence to support the entrapment defense.  (*People v. Federico* (2011) 191 Cal.App.4th 1418, 1422 (*Federico*).)

*Applicable Law and Analysis*

In California, the test for entrapment is focused on police conduct.  (*Watson*, *supra*, 22 Cal.4th at p. 223.)  It is an objective analysis and asks whether a law enforcement officer or his agent was "likely to induce a normally law-abiding citizen to commit the offense."  (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690 (*Barraza*); *Watson*, *supra*, at p. 223.)  The test presumes that when presented with the opportunity to act unlawfully, such a person would resist the temptation to commit a crime.  (*Barraza*, *supra*, at p. 690.)  While official conduct that merely offers an opportunity for criminal activity is permissible, such as a decoy program, "it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime."  (*Ibid*.)

Although the distinction between permissible and impermissible police conduct is largely based on the circumstances of each case, the court in *Barraza* provided two guiding principles.  "First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established."  (*Barraza*, *supra*, 23 Cal.3d at p. 690.)  Examples would include appeals to commit a criminal act out of sympathy rather than for personal gain.

(*See, e.g.*, *Bradley*, *supra*, 315 F.3d at pp. 1096-1097 [entrapment instruction was appropriate where law enforcement officers' used a decoy visibly suffering from drug withdrawals to beg defendant to obtain cocaine for him, raising a question of whether a normally law-abiding person would have been induced to commit the crime out of sympathy].)  "Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment." (*Barraza*, *supra*, at p. 690.)  Examples under this principle might include "a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (*Ibid*.)  In addition, a court should also consider the effect the police conduct would have "on a normally law-abiding person situated in the circumstances of the case at hand" (i.e. prior transactions, suspect's responses to the officers, gravity of the crime, and difficulty of detecting perpetrators). (*Ibid*.)

For example, in *People v. Reed* (1996) 53 Cal.App.4th 389, the court held that there was no evidence to support the entrapment defense.  The court reasoned that the officer's regular phone and mail correspondence with the defendant over the course of several weeks did not cajole or importune him into attempting to molest two young girls given defendant's repeated assurance of desire to go through with the crime.  (*Id*. at pp. 400-401; see also *Federico, supra,* 191 Cal.App.4th at pp. 1423-1424 [evidence did not support a jury instruction for entrapment in part because defendant pursued online communications with a person he believed was a 12-year-old girl and attempted to meet her for sex].)  Detectives did ask defendant to describe what he planned to do with the girls, but they offered no specific suggestions, other than that they sought "a 'good teacher' who would make the activities fun" for the girls.  (*Reed*, *supra*, at p. 400.)  By contrast, in *Bradley*, the court found that there was substantial evidence to support an instruction on the entrapment defense.  (*Bradley, supra*, 315 F.3d at p. 1096.)  It reasoned that officers' use of a drug addict experiencing symptoms of withdrawal would likely

appeal to the sympathies of a normally law-abiding person. (*Ibid.*) Moreover, the decoy's desperate and persistent pleas for defendant to help him find cocaine was sufficient evidence such that a jury could conclude that the conduct "badgered" or "cajoled" defendant into committing a crime. (*Ibid.*)

Appellant argues that law enforcement's conduct in this case induced him to act criminally, and therefore the jury should have been instructed on the entrapment defense. We disagree.

The evidence is insufficient to support an entrapment instruction. Appellant contends that Detective Dabney pressured and importuned him into engaging in criminal activity by instigating the online conversations. Although Detective Dabney did initiate many of the communications, his actions merely created an opportunity for appellant to engage in criminal behavior. At all times, appellant believed he was chatting with a 13-year-old. During their correspondence, Detective Dabney reminded appellant several times of Chavalita's age and her apprehensions about meeting and engaging in sexual activities, thereby signaling to appellant the illegal nature of the proposed activities. Still, appellant said he was fine with Chavalita's age, he continued the explicit online communications with her, and he remained committed to meeting and potentially engaging in sexual activities with her. Additionally, Chavalita offered to sell an adult's underwear but appellant elected to not pursue that offer, opting instead to accept panties from someone he believed was a juvenile. Moreover, he was aware of the illegal nature of the proposed meeting and emphasized that he could get "locked up" if they were caught. The record does not support a conclusion that Detective Dabney applied overbearing pressure to induce appellant to act criminally. (See *Federico*, *supra*, 191 Cal.App.4th at p. 1424 [no evidence of entrapment where defendant engaged in online sexual conversations and arranged to meet with a person he believed was a 12-year-old girl]; *Provigo Co. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 568-569 [use of underage boys as decoys to expose unlawful sale of alcohol to minors was not

entrapment where there is no evidence of law enforcement pressure or overbearing conduct].) Appellant had numerous opportunities to withdraw and cease communications with Chavalita. (See *Reed*, *supra*, 53 Cal.App.4th at p. 400.) He did not.

The record also does not support appellant's contention that Detective Dabney manipulated and cajoled him into discussing sex and possible illegal conduct. Although Detective Dabney did encourage appellant in a manner that might be viewed as suggestive or flirtatious, his communications do not amount to badgering or cajoling appellant into attempting to have sex with a minor. During the five-week correspondence, Detective Dabney merely asked appellant if he wanted to have sex with Chavalita. It was appellant who repeatedly initiated the sexual dialogue, explicitly describing the sexual acts he wanted to do with Chavalita. Appellant also repeatedly asked for a pair of Chavalita's panties and asked her to make them "dirty" for him. He pushed for hers despite being given the option to buy an adult's underwear. He argues that he offered to buy Chavalita's because she told him she needed money. However, a sense of sympathy for the financial struggles of a 13-year-old would not induce a normally law-abiding person to seek a sexual encounter with a juvenile. (Cf. *Bradley*, *supra*, 315 F.3d at p. 1096 [court found that physical withdrawal symptoms of a drug addict could appeal to the sympathies of a normally law-abiding person].) Moreover, it was appellant who proposed and pursued the idea of meeting in person. (See *Federico*, *supra*, 191 Cal.App.4th at pp. 1423-1424 [defendant similarly pursued the opportunity to meet and have sex with a 12-year-old online].) Chavalita, on the other hand, expressed apprehension about meeting in person because of her age. Finally, although appellant's initial advertisement did not indicate a particular interest in the underwear of an underage girl, a normal law-abiding person would not have pursued the opportunity for sex and brought condoms to the proposed meeting with an underage girl. Appellant was merely presented with an opportunity to commit a crime, and he did.

The record demonstrates that Detective Dabney's conduct was not likely to induce a normally law-abiding person to commit the charged offenses. Therefore, the trial court properly denied appellant's request to instruct the jury on entrapment.

## DISPOSITION

The judgment is affirmed.