Filed 6/21/16  P. v. Grohs CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RALPH GROHS,<br><br>    Defendant and Appellant. | A141282<br><br>(Contra Costa County<br>Super. Ct. No. 11596758) |

Defendant Ralph Grohs was charged with one count of attempted kidnapping of a child under 14 years of age, but convicted by a jury of a single misdemeanor count of attempted false imprisonment, a lesser included offense.  It was undisputed that defendant was intoxicated on the day of the alleged crime, and that he was an alcoholic.  The jury was instructed that it could consider defendant's voluntary intoxication only in connection with whether he acted with intent to kidnap.  On appeal, defendant argues this was prejudicial error because voluntary intoxication was also relevant to his defense to the attempted false imprisonment charge for which he was ultimately convicted.  We agree and reverse the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Prosecution evidence*

On the morning of Saturday, October 12, 2013, Andrea R. and her eight-year-old daughter, referred to as Jane Doe (Jane) at trial, were visiting the Lafayette Library.  As they left the library, Andrea R. noticed someone out of the corner of her eye.  Jane, who was walking five feet behind Andrea R., ran to catch up to her mother and said she

1

wanted to go to their car. The two walked down a set of stairs toward their car, but when Andrea R. looked back, she saw that the person she noticed earlier was now following them. She no longer felt safe walking to the parking garage, so she and Jane walked down a second set of stairs to the street. By this point, the man was chasing Andrea R. and Jane, and was approximately 20 feet behind them. The man was "walking briskly, although unsteady," toward them. Andrea R. heard the man say, "She thinks she's for you, but she's for me."

Andrea R. believed it would be safest if she and her daughter went to a public area, so she walked toward a nearby sewing shop where Jane had taken sewing classes. The man continued to follow them and was yelling. He was walking with an unsteady gait and appeared "very disheveled." Andrea R., who worked in a rehabilitation hospital with "special needs" children, could not understand what the man was saying and believed he "had special needs," and that "there was something wrong with him."

Andrea R. and her daughter crossed a street, and Andrea R. began running as fast as she could with an eight-year-old in tow. When they arrived at the sewing shop, Jane fell down. The man reached for Jane, but Andrea R. was able to grab her first and pull her into the store. After Andrea R. and Jane were inside, Meredith MacLeod, who worked at the sewing shop, locked the door. The man banged on the door. MacLeod briefly observed him as having "glazed-over eyes, craziness." He was "sort of disheveled" and "was not someone who looked coherent or well."

Andrea R. called the police, who arrived a few minutes later, and Andrea R. described the man who had chased her and Jane. Sometime after 3:00 p.m. that same afternoon, police spotted defendant near the Lafayette Library and identified him as matching the description provided by Andrea R. The officers contacted defendant as he was exiting a bathroom at the library. He appeared intoxicated and was carrying a bottle of alcohol in a grocery bag. Officer Berch Parker took two pictures of defendant and sent one of them via text message to MacLeod and Andrea R. MacLeod responded that she thought it was the same person she saw outside of the sewing shop, but she was not entirely sure. Andrea R. responded that she thought it was the same person that chased

2

her, but because she was a little hesitant, Officer Parker asked her to come to the library to observe the man in person. When Andrea R. arrived and observed defendant, she was "a hundred percent" sure it was the same person.

Defendant was arrested and transported to the police station. Once there, Parker read defendant his *Miranda* rights and began questioning him. Defendant said he woke up at 9:30 that morning, and was given a bottle of vodka by a friend around 10:00 a.m. Defendant did not remember how much of it he drank, although he knew it was less than a whole bottle because he would have passed out if he drank the whole bottle. Defendant said he stopped drinking at 4:00 p.m. Defendant still felt intoxicated during the questioning, but was more intoxicated earlier in the day around noon. Defendant blacks out when he drinks, but denied ever doing "anything crazy" when he blacked out.

Defendant admitted he was at the Lafayette library earlier in the day around "11:00 something," but when Parker asked him if he was talking to anybody when he was there, defendant responded, "No. I never touched—I'm innocent." Parker accused defendant of lying and told him the police had video from the library. Defendant responded, "Then I just said hello. I—I don't really remember."

At one point during the interrogation, Parker administered a preliminary alcohol screening (PAS) test to determine defendant's blood-alcohol level; it was .20. Parker then resumed his questioning, and defendant continued to deny chasing a woman or her child down the street. When Parker told defendant that he was "ID'd by two different people," defendant said he could not believe he would do such a thing and had no recollection of chasing a girl and her mother.

### Defense evidence

Dr. Mitchell Eisen, an expert witness on eyewitness memory and identification, testified at length about the lack of reliability of the identifications made by Andrea R. and MacLeod. The details of Dr. Eisen's testimony are not relevant to this appeal.[1]

---

[1] Defendant also sought to introduce third-party culpability evidence showing that a person named "Dave" was the perpetrator, but the trial court denied defendant's request.

Defendant also called three witnesses who testified about his character and his alcoholism. John Nunes is a lifelong friend and former coworker. According to Nunes, defendant is an alcoholic and began struggling with alcohol in the mid to late 1990's; his abuse "accelerated in the 2000's." Nunes has seen defendant intoxicated at least 20 times. Defendant was "passive" when he drank; he usually drank alone and did not get mean or angry. Sometimes, defendant was "fairly intoxicated" when Nunes observed him, while at other times he was just "moderately" intoxicated. In 2005, Nunes worked as a labor union representative for Safeway and helped defendant, who worked for Safeway, gain admission to an alcohol rehabilitation program. Defendant, however, eventually lost his job because of his alcohol abuse.

Defendant's ex-wife, Stephanie Randhawa, testified that she and defendant were married in 1989 and divorced in 1995 or 1996. They had a daughter together in 1992. Defendant never displayed strange or violent behavior toward their daughter, and did not act abnormally around Randhawa's other daughter from a later marriage, who defendant babysat almost every other day. Randhawa knew defendant was an alcoholic; he started drinking about a year after the birth of their daughter. On some occasions, defendant passed out because he was heavily intoxicated. Defendant began to "really struggle" with alcohol over the last year, and Randhawa would not let him babysit her other daughter anymore. Defendant had been homeless at times since 2013. In October 2013—the month of the alleged crime—Randhawa noticed that defendant was drunk a lot of the time, and Randhawa contacted defendant less frequently.

Defendant's older sister, Judith Cubillo, testified that in September 2013, defendant spent time in jail due to an alcohol related issue. He then spent approximately one week in a rehabilitation program, and was homeless for a week and a half after that. Cubillo has never known defendant to be violent, and there was nothing abnormal about his interactions with the children in their family. Cubillo was aware that defendant is an alcoholic. When defendant is intoxicated, he "just wants to be left alone." Defendant is not a "mean drunk," and it is not in his character to act violently or harm a child, even when he is drinking.

4

Defendant testified on his own behalf.  He previously worked at Safeway for 35 years, and is now a homeless alcoholic.  Alcoholism resulted in his "loss of family, friends, job, soul."  He was convicted of petty theft in September 2013 for stealing alcohol, and had two felony convictions for driving under the influence of alcohol in 2008.  There is no "normal" amount of alcohol he drinks in a day, and drinking half a bottle of vodka gets him "pretty well intoxicated."  His alcohol use causes blackouts, but he denied that he ever became violent or angry while intoxicated.

Defendant explained that he had arrived in Lafayette a few days before October 12.  He was just "kind of drifting in the streets."  On October 12, defendant started his morning with a cup of coffee at a coffee shop but had nothing to eat.  He then began drinking vodka.  He had two bottles of vodka with him, one full and the other already open.  Defendant drank approximately half a bottle of vodka at the coffee shop, and he was "substantially drunk."

Defendant admitted he was at the Lafayette Library on October 12 sometime after 10:00 a.m.  Defendant went there because he enjoyed reading and was in the process of reading a book about Thomas Jefferson.  When asked to describe how drunk he was upon entering the library, defendant said, "My memory would say I was drunk.  So I was drunk.  So that would be hard to walk and slurred speech, motor skills limited, so I was that way."  Defendant continued to drink while in the library, although he did not remember how much he drank.  Defendant denied chasing a little girl and her mother on October 12, or attempting to kidnap a child.  He also denied having ever been at the sewing shop, and had never seen MacLeod and Andrea R. before his trial.

Defendant had a vague recollection of being arrested at the library that day, and recalled "[j]ust a little" about being interrogated by Officer Parker at the police station.  Defendant was "pretty drunk" during the interview.  Defendant felt intimidated and nervous while being questioned, and was guessing when he told Parker what he was doing during specific timeframes.  Defendant was even more intoxicated earlier in the day.  Defendant said that in the past, his blood alcohol level has been over .30 and close to .40.

5

*Jury instructions and verdict*

The trial court instructed the jury on count 1, attempted kidnapping (Pen. Code, § 207, subd. (a); § 208, subd. (b); § 664),[2] and on the lesser included offense of attempted misdemeanor false imprisonment. (§ 236/237, subd. (a); § 664.) The jury was also instructed on voluntary intoxication. The trial court told the jury that it could consider evidence of voluntary intoxication "only in deciding whether the defendant acted with the intent to kidnap Jane Doe," and that "[y]ou may not consider evidence of voluntary intoxication for any other purpose."

The jury returned a verdict the next day, acquitting defendant of attempted kidnapping, but finding him guilty of attempted false imprisonment. Defendant was sentenced to 180 days in county jail. Because his presentence credits satisfied the sentence, he was ordered released from custody.

Defendant timely appealed.

## DISCUSSION

Defendant raises two issues on appeal. First, he argues that the trial court committed prejudicial error by instructing the jury, in effect, that it could not consider defendant's voluntary intoxication in deciding whether defendant was guilty of attempted false imprisonment. Second, he argues that the trial court committed prejudicial error by not permitting him to present evidence that a third-party was culpable for the crime. Because we hold that there was reversible error in instructing the jury, we do not reach the second issue.

*Background on jury instructions and the lesser included offense*

Defendant submitted a list of proposed jury instructions identified only by CALCRIM title and number, including CALCRIM No. 3426 on voluntary intoxication. Neither party requested an instruction on lesser included offenses. The court held a jury instruction conference on the morning of March 4, 2014, and agreed to give a voluntary

---

[2] All further unspecified statutory references are to the Penal Code.

6

intoxication instruction.  There was no discussion of any lesser included offenses at that time.

The court held a second conference with the attorneys on March 4, at which the prosecutor asked the court to instruct the jury on the lesser included offense of attempted false imprisonment.[3]  Defense counsel responded that she "would leave that to the Court to determine which lessers are appropriately given."  The trial court tabled the issue for further discussion at an afternoon conference.

That afternoon, the trial court gave counsel a revised set of jury instructions, which included an instruction on misdemeanor attempted false imprisonment as a lesser included offense.  Defense counsel did not object to the instruction, nor did she request a voluntary intoxication instruction in connection with the crime of attempted false imprisonment.  In short order, the court then ruled on the admissibility of exhibits, took a brief recess, and instructed the jury.

We describe the jury instructions relevant to this appeal.  The court first instructed on the crime of attempted kidnapping:

"To prove that the Defendant is guilty of [attempted kidnapping], the People must prove:  One, that the defendant took a direct but in effective [sic] step towards committing the crime of kidnapping; and two, that the defendant intended to commit the crime of kidnapping. . . . [¶] . . . [¶] The elements that are required for there to be a commission of the crime of kidnapping are following [sic]: A defendant took, held, or detained another person by using force or by instilling fear; number two, using that force or fear, the defendant moved the other person or made the other person move a substantial distance; and three, the other person did not consent to the movement."

_____

[3] The elements of kidnapping are: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.  (§ 207, subd. (a); *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1368.)  False imprisonment is "the unlawful violation of the personal liberty of another."  (§ 236.)  The parties do not dispute that attempted false imprisonment is a lesser included offense of attempted kidnapping.

The court then read the instruction on voluntary intoxication, modified from CALCRIM No. 3426 to fit this case as follows:

"[You] [m]ay consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. *You may consider that evidence only in deciding whether the defendant acted with the intent to kidnap Jane Doe.* A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it can produce an intoxicating effect or willingly assumed the risk of that effect. [¶] In connection with the charge of kidnapping, the People have the burden of proving beyond a reasonable doubt that the defendant acted with the intent to kidnap Jane Doe. If the people have not met this burden, you must find the defendant not guilty of the charged crime. *You may not consider evidence of voluntary intoxication for any other purpose.*" (Emphasis added.)

The court then instructed the jury on attempted false imprisonment, in pertinent part:

"I'm going to now instruct you upon a lesser-included offense that is known as attempted false imprisonment. [¶] To prove that the defendant is guilty of false imprisonment, the People would prove that, one, a defendant intentionally detained or confined a person; and two, that person's act made that person stay or go somewhere against that person's will. . . . [¶] To prove the crime of attempted false imprisonment, the People must prove, one, that the defendant took a direct but ineffective step toward committing the crime of false imprisonment; and two, the defendant intended to commit the crime of false imprisonment."

The court did not instruct the jury that it could consider defendant's voluntary intoxication in deciding whether defendant committed the lesser included offense of attempted false imprisonment.

### *The jury instructions on involuntary intoxication were erroneous*

The basic legal principles are not in dispute: Attempted false imprisonment, like all attempt crimes, is a specific intent crime. (See *People v. Kipp* (1998) 18 Cal.4th 349,

8

376 ["An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission"].) Evidence of voluntary intoxication can negate the required mental state of a specific intent crime. (See § 29.4, subd. (b) ["Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent . . . ."]; accord *People v. Boyer* (2006) 38 Cal.4th 412, 469 ["Voluntary intoxication can prevent formation of any specific intent requisite to the offense at issue . . . ."].) Evidence of voluntary intoxication may be applicable to attempted false imprisonment, just as it may be applicable to attempted kidnapping.

In directing the jury to consider the evidence of voluntary intoxication solely on the question of whether defendant formed the mental state to commit attempted kidnapping, the trial court effectively told the jury it could *not* consider defendant's intoxication in deciding whether defendant committed attempted false imprisonment. We presume the jury followed the court's instruction. (*People v. Homick* (2012) 55 Cal.4th 816, 853.) The instruction was erroneous because evidence of defendant's intoxication was relevant to whether defendant formed the specific intent to commit false imprisonment.

The Attorney General argues that the evidence did not support giving a voluntary intoxication instruction in connection with attempted false imprisonment, relying on *People v. Roldan* (2005) 35 Cal.4th 646, overruled on other grounds as stated in *People v. Doolin* (2005) 45 Cal.4th 390, 421, fn. 22. This argument is unconvincing. In *Roldan*, the trial court did not commit error in refusing to instruct the jury on voluntary intoxication in connection with murder and robbery charges where the evidence of defendant's intoxication was "only minimal and insubstantial" (others associated with him had been drinking, and he told a witness he "felt a little woozy"). (*Id.* at pp. 715-716.) Here, as we have described, there was an extraordinary amount of evidence that defendant was an alcoholic and that he was intoxicated on October 12, 2013. He was arrested with a bottle of vodka in a bag, he appeared intoxicated to the arresting officer, he told the officer that he was intoxicated, and he blew .20 on a PAS test. Defendant's

friends and family corroborated his testimony that he was an alcoholic. Even Andrea R. and MacLeod's descriptions of the assailant as disheveled and incoherent, with glazed eyes and an unsteady gait, were consistent with intoxication. On this record, there was substantial evidence to warrant giving the voluntary intoxication instruction. (See *People v. Williams* (1997) 16 Cal.4th 635, 677 [voluntary intoxication instruction appropriate "when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.' [Citations.]"].)

"Although a trial court has no sua sponte duty to give a 'pinpoint' instruction on the relevance of evidence of voluntary intoxication, 'when it does choose to instruct, it must do so correctly.' " (*People v. Pearson* (2012) 53 Cal.4th 306, 325.) Here, by instructing the jury that it could not consider defendant's voluntary intoxication in determining if he intended to commit attempted false imprisonment, the trial court did not correctly instruct the jury. This was error.

### *Defendant has not forfeited his claim of instructional error*

The Attorney General contends that defendant forfeited his claim of instructional error because he did not object to the instructions on voluntary intoxication, or request an instruction on voluntary intoxication for the crime of attempted false imprisonment. We reject this argument.

Initially, we agree that if defendant wanted the trial court to instruct the jury to consider his voluntary intoxication in connection with attempted false imprisonment, "it was incumbent upon him to ask, and a claim of error in the failure to so instruct is forfeited for appellate purposes." (*People v. Townsel* (2016) 63 Cal.4th 25, 59 (*Townsel*).) Defendant's argument, however, is not merely that the trial court failed to give the instruction in connection with the attempted false imprisonment charge. Rather, he contends that in directing the jury to consider voluntary intoxication solely on the question of whether he formed the mental state required for attempted kidnapping, the instruction affirmatively and erroneously precluded the jury from considering the evidence in connection with the attempted false imprisonment charge. "We may review defendant's claim of instructional error, even absent objection, to the extent his

10

substantial rights were affected." (*Id.* at pp. 59-60; accord § 1259 ["The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"].)

In *Townsel*, our Supreme Court held a defendant did not forfeit a claim of instructional error on appeal under similar circumstances to the ones presented in this matter. The trial court in *Townsel* had instructed the jury that it could consider the defendant's intellectual disability solely in connection with whether defendant formed an intent to kill, thereby erroneously precluding the jury from considering defendant's intellectual disability on a dissuading a witness charge and a witness killing special-circumstance allegation. (*Townsel, supra*, 63 Cal.4th at p. 57.) The defendant never objected to the instruction, but argued he could challenge the instruction on appeal because the instructional error affected his substantial rights, and specifically his constitutional rights "to a fair trial, proof beyond a reasonable doubt and trial by jury on every element of the charged offenses, a meaningful opportunity to present a defense, and a reliable jury verdict." (*Id.* at p. 60.) The Supreme Court agreed the error affected defendant's substantial rights and was reviewable on appeal despite the lack of objection below. (*Ibid.*)

The type of instructional error committed here is indistinguishable from the error in *Townsel*; in both cases, the jury was erroneously precluded from considering relevant evidence on certain charges. Therefore, following *Townsel,* we hold the trial court's incomplete and erroneous instruction in this case affected defendant's substantial rights, and that defendant's assertion of instructional error is not forfeited on appeal.

### The instructional error was prejudicial

Although we conclude the trial court committed instructional error, we will not reverse the judgment unless we also determine that the error was prejudicial. (*People v. Johnson* (2016) 243 Cal.App.4th 1247, 1291 and fn. 31.) The parties dispute the standard of review for assessing prejudice that applies to this case. Defendant contends the error violated his federal due process right to have the jury consider a defense at trial, therefore

11

requiring us to consider whether the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 23-24 (*Chapman*).[4] The Attorney General asserts the error is one of state law, which requires us to determine under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) whether it is reasonably probable that a result more favorable to defendant would have been reached absent the error.

In *Townsel, supra*, our high court applied the *Chapman* standard of prejudice to an instructional error that, as we just explained, is indistinguishable from the error at issue in this appeal. The high court explained that "[b]ecause the trial court effectively instructed the jury not to consider that evidence on the charge and allegation, it erred under both state law and the federal Constitution." (*Townsel, supra*, 63 Cal.4th at p. 64.) Then, citing *Chapman*, the court held that the Attorney General failed to meet its burden of "showing that the guilty verdict on the dissuading charge and the true finding on the witness-killing special-circumstance allegation were 'surely unattributable' to the trial court's error in essentially instructing the jury not to consider the intellectual disability evidence in relation to the charge and allegation." (*Townsel* at p. 64.)

Following *Townsel*, we apply the *Chapman* standard of review to the instructional error in this case. The most likely explanation for the jury finding defendant not guilty of attempted kidnapping but guilty of attempted false imprisonment is that the jury found defendant lacked the specific intent to commit kidnapping because he was intoxicated. Attempted false imprisonment, like attempted kidnapping, requires a specific intent. Had

---

[4] Quoting the Ninth Circuit's opinion in *United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201, defendant makes an alternative argument that the instructional error committed in this case is per se reversible because "[t]he right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error." Defendant cites no California case adopting the Ninth Circuit's approach, and decisions of lower federal courts on federal matters, while persuasive, do not bind us. (*People v. Federico* (2011) 191 Cal.App.4th 1418, 1424, fn. 4.). We are, of course, bound by this state's Supreme Court, which has held that reviewing courts should apply prejudicial error review to the type of instructional error at issue in this case. (*Townsel, supra*, 63 Cal.4th at p. 64.)

the jury been permitted to consider evidence of intoxication in determining defendant's guilt for attempted false imprisonment, it is not clear beyond a reasonable doubt that they would have convicted defendant of that charge anyway. (*Chapman, supra*, 386 U.S. at p. 24.) Even under *Watson, supra*, we would find the error prejudicial because it is reasonably probable the jury would have acquitted defendant of attempted false imprisonment had it considered evidence of his intoxication.

The Attorney General asserts there is another explanation for the jury's verdict because "[t]he court had also instructed the jury on the defense of mistake with respect to attempted kidnapping." The Attorney General argues that "[a]s such, the jury could have found that [defendant] was not guilty of attempted kidnapping if it found that [defendant] 'believed Jane Doe was with him,' thus negating the specific intent requirement."

This argument is not persuasive. The jury was instructed on mistake: "If the defendant's conduct would have been lawful under the facts as he believed them to be, he did not commit the crime of attempted kidnapping. Therefore, if you find that the defendant believed that Jane Doe was with him, he did not have the specific intent required for the crime of attempted kidnapping." This instruction apparently was based on Andrea R.'s testimony that while defendant was following Andrea R. and Jane he said "she thinks she's for you, but she's for me." During his closing argument, the prosecutor admitted to the jury that the instruction on mistake "[m]ight have puzzled you," was "kind of confusing," and "really doesn't have any application to this case." The prosecutor thus discredited the mistake theory. More to the point, even if the jurors found defendant was mistaken about Jane being "for [him]" despite the "confusing" instruction, there is nothing in the record to suggest the "mistake" could have been based on anything other than defendant's intoxication.

The Attorney General also contends there was no prejudice because defense counsel did not argue voluntary intoxication as a defense in her closing arguments. This argument fails to look at instructional error in light of the entire record. The prosecutor spent a significant amount of time addressing defendant's intoxication during his closing argument. But defendant's primary defense in closing argument was that he was not the

13

perpetrator, and to have focused on voluntary intoxication would have undermined this defense. Nonetheless, as we have described, defendant offered evidence to support a voluntary intoxication defense, and defense counsel referred to defendant's alcoholism and intoxication throughout the closing argument. She argued that defendant did not confess to Officer Parker even though he was "vulnerable" and "drunk," which made him "a person who you can most easily [get] a confession out of." She discussed the character witnesses' testimony that defendant was someone with a "long, long struggle with alcohol" but who "wouldn't hurt a fly." And she reiterated that "[n]o matter how drunk [defendant] gets, he would not do this." On this record, defense counsel's tactical choice to discuss defendant's alcohol use while focusing on the primary defense that defendant was not the perpetrator is not a basis to conclude that voluntary intoxication was not a viable defense to attempted false imprisonment.

## DISPOSITION

The judgment of conviction is reversed.


_____
Miller, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.

14