Filed 2/13/26

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANDALL OSCAR-KELLY ALSTON,<br><br>    Defendant and Appellant. | A169256<br><br>(Contra Costa County Super. Ct. No. 012301776) |

Randall Oscar-Kelly Alston appeals after a jury convicted him of, among other crimes, an attempted lewd act on a child (Pen. Code, §§ 288, subd. (a), 664) and he was granted formal probation. Alston asserts: (1) the trial court violated his statutory rights, under Code of Civil Procedure section 231.7,[1] when it overruled defense counsel's objections to the prosecutor's peremptory challenges to three prospective jurors; and (2) the trial court erroneously refused to instruct on entrapment. In the published portion of this opinion, we agree that the trial court erred, with respect to one peremptory challenge, by failing to explain the reasons for its ruling, as the statute requires. (§ 231.7, subd. (d)(1).) In the unpublished portion of the opinion, we reject Alston's claim of instructional error. We reverse and remand the matter for a new trial.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Background section A and Discussion section B.

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

**A.**

In June 2023, Detective Jeffrey Agostinho of the Brentwood Police Department was part of an undercover operation targeting child exploitation. As part of this investigation, Agostinho used a social networking app, called Tagged, to communicate with strangers online. He created a Tagged profile—using a fictitious name (Jimena R.), a fictitious date of birth, and an enhanced photograph of another undercover detective—to portray himself as an 18-year-old female. He used the age of 18 because the Tagged app would not permit minors to create a profile.

On June 2, 2023, at 1:21 p.m., Alston messaged Agostinho's Jimena profile, exchanged pleasantries, and said she was "gorgeous" and "beautiful." Alston described himself in his profile as a 19-year-old male named Luke, and included two photographs, a short biography, and a location.

Agostinho and Alston exchanged phone numbers and switched to text messaging. Via text message, Agostinho asked Alston if he was really 19 years old. Alston—who was in fact 29 years old at the time—responded that he was 22 years old. Agostinho then sent Alston an age regressed photo of an undercover detective and asked Alston how old she looked. Alston first guessed that the photo showed a 19-year-old and added, " 'Damn, you so fine.' " Alston then guessed 18. Each time, Agostinho responded "younger." Alston guessed, " '17? Like damn. LOL.' "

At 2:02 p.m., approximately 40 minutes after the initial contact, Agostinho told Alston that Jimena was " 'going to turn 14 next week.' " Alston acknowledged Jimena's age and asked if he was "too old" for her. Agostinho responded by saying, "I'm tired of these boys. I'm looking for a man." One minute after

Agostinho disclosed Jimena's age, Alston asked, " 'So you want to try to link up?' "

Alston asked Jimena what she wanted to do. Agostinho responded, " 'Oh, I don't know. I'm a little in experienced [*sic*] in all of this. Ha, ha, ha. I have only had one boyfriend.' " Four minutes after Agostinho disclosed Jimena's age, Alston texted, " 'No problem. Are you available to link up today? Can we smoke and chill and get to know each other?' " After further banter, Alston wanted to confirm that Jimena was real, so Agostinho had a female detective hold a brief phone call with Alston. During the call, the female detective spoke very softly to portray herself as a 13-year-old. Five minutes later, after asking if Jimena wanted him to send a "sexy pic" and Agostinho's affirmative response, Alston sent Jimena a video of him masturbating.

Agostinho texted, " 'I only went down on my ex. I never gone all the way or anything.' " Alston responded, " 'I'll show you.' " Alston asked Jimena for a video and Agostinho sent another age regressed photograph of a female detective. Alston asked Jimena if she knew " 'how to suck D?' " Agostinho recognized from his training that D was "short for dick." Agostinho responded, " 'I have done it once so I may need some help.' " Alston then asked, " 'So where do I meet you out there? What is the address?' " Agostinho suggested a shopping center in Brentwood and suggested bringing condoms. After another phone call with the female detective, Alston texted that he was on his way.

Police officers arrested Alston shortly after he arrived at the meeting place.

### B.

At trial, in 2023, the prosecution relied exclusively on law enforcement witnesses because the 13-year-old victim (Jimena

3

R.) was a fictitious creation of the Brentwood Police Department's undercover operation.

A jury convicted Alston of meeting a minor for lewd purposes (Pen. Code, § 288.4, subd. (b); count one); an attempted lewd act on a child (*id.* §§ 288, subd. (a), 664; count two); contact with a minor for sexual offense (*id.* § 288.3, subd. (a); count three); and showing pornography to a minor (*id.* § 288.2, subd. (a)(2); count four). The trial court suspended imposition of sentence and placed Alston on formal probation for three years. He was required to complete a sexual offender treatment program and register as a sex offender (*id.* § 290).

## DISCUSSION

### A.

Alston contends we must reverse the judgment and remand the case for a new trial because the trial court erred in overruling his objection to peremptory challenges the prosecutor exercised to remove three prospective jurors. With respect to one prospective juror (Ms. G.), we agree with Alston that the People's reason for the peremptory challenge was presumptively invalid, under section 231.7, subdivision (e), and that the trial court prejudicially erred by denying defense counsel's objection without making any findings or explaining its reasons. We need not reach Alston's arguments regarding the other prospective jurors.

### 1.

Until recently, courts used a three-step inquiry, established by *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258, which placed the burden on the party opposing a peremptory challenge to demonstrate impermissible discrimination. (*People v. Armstrong* (2019) 6 Cal.5th 735, 766; *People v. Jaime* (2023) 91 Cal.App.5th 941, 943.) Studies showed that the *Batson/Wheeler* process was inadequate to prevent racial discrimination. (*People v. Jimenez* (2024) 99 Cal.App.5th

4

534, 539-540 (*Jimenez*); Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3070 (2019–2020 Reg. Sess.) as amended May 4, 2020, p. 1.) Accordingly, the Legislature enacted section 231.7, applicable to criminal trials in which jury selection begins on or after January 1, 2022, to establish a new process for identifying unlawful bias in the use of peremptory challenges. (Former § 231.7, subds. (i), (k), as added by Stats. 2020, ch. 318, § 2.) Courts must broadly construe the new law "to further the purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges." (Stats. 2020, ch. 318, § 1, subd. (c).)

Section 231.7 prohibits the use of a peremptory challenge "to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (*Id.* subd. (a).) Discrimination, in violation of section 231.7, subdivision (a), need not be purposeful but, rather, may reflect only " 'unconscious bias,' " which "includes implicit and institutional biases." (*Id.* subds. (d)(1), (d)(2)(C).)

When a defendant objects, under section 231.7, to the prosecutor's use of a peremptory challenge, the defendant is no longer required to make a prima facie showing of racial discrimination. Instead, the prosecutor must state reasons for exercising the challenge. (§ 231.7, subd. (c); *People v. Jaime, supra,* 91 Cal.App.5th at p. 943.) The trial court must then "evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances," considering "only the reasons actually given" and not any "other possible justifications." (§ 231.7, subd. (d)(1).) If the court finds "a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, . . . or perceived membership

5

in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Ibid*.) The trial court "shall explain the reasons for its ruling on the record." (*Ibid*.)

Section 231.7 also "contains two separate provisions (subdivisions (e) and (g)) describing presumptively invalid reasons for the exercise of a peremptory challenge. Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption. (*Id*. subds. (e), (f), (g)(2).)" (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 793 (*Ortiz*).) Subdivision (e) includes a presumptively invalid reason that is relevant here: "[e]xpressing a distrust of or having a negative experience with law enforcement." (§ 231.7, subd. (e)(1).) Such a reason is invalid unless rebutted "by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race" or other prohibited factor "and that the reasons articulated bear on the prospective juror's ability to be fair and impartial." (§ 231.7, subd. (e).)

The clear and convincing evidence standard is met—and the presumption of invalidity is overcome—when "the factfinder . . . determine[s] that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (§ 231.7, subd. (f).) If the trial court determines the presumption of invalidity is overcome, the court may consider that reason, along with any other stated reasons, in the totality of the circumstances analysis mandated by section 231.7, subdivision (d)(1). (*Jimenez, supra*, 99 Cal.App.5th at pp. 541, 545; *Ortiz, supra,* 96 Cal.App.5th at p. 805.)

On the other hand, "[i]f the presumption of invalidity for a particular reason identified by counsel is not rebutted . . . , that

reason must be treated as conclusively invalid. In other words, the trial court must treat as conclusive the presumption that the reason identified by counsel was actually based on 'race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation,' or perceived membership in any such group, as prohibited by section 231.7, subdivision (a)." (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 891, italics omitted [considering reasons presumed invalid under § 231.7, subd. (g)]; accord, *People v. Aguilar* (Jan. 2, 2026, D083172) __ Cal.App.5th __, __ [2026 Cal.App.LEXIS 60, *16].)

On appeal, we review de novo the trial court's decision to overrule an objection under section 231.7, while upholding the trial court's express factual findings if supported by substantial evidence. (§ 231.7, subd. (j); *Jimenez, supra,* 99 Cal.App.5th at p. 544.) In conducting this review, the appellate court "shall not impute to the trial court any findings . . . that the trial court did not expressly state on the record." (§ 231.7, subd. (j).) We "consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain" the party's use of the peremptory challenge. (§ 231.7, subd. (j).) The statute also "precludes a finding of harmless error." (*Ortiz, supra*, 96 Cal.App.5th at p. 795; see § 231.7, subd. (j).) If we conclude the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j).) "The proper interpretation of a statute is a question of law subject to de novo review." (*People v. Harring* (2021) 69 Cal.App.5th 483, 495.)

### 2.

Alston is Black. During voir dire, a Latina prospective juror (Ms. G.) identified herself (as well as Alston) as a "person of color." Ms. G. told the trial court that she was an events coordinator for a concert promoter.

7

Ms. G. also indicated that her sister-in-law was a victim of sexual abuse "at a very young age." The perpetrator was convicted and served prison time. Ms. G's husband, who was also young at the time, was affected by his sister's ordeal. Ms. G. said, "I do have very specific strong feelings about . . . this kind of act on a minor." However, when asked by defense counsel if she could be fair in this case, Ms. G. said, "I'm not the type of person to put my thumb on the scale. Absolutely not. I would never do that. So I would definitely listen to the evidence and be as fair as possible. But, yeah, it is a concern. It's something that's in my psyche, . . . it might sway . . . what I'm thinking about certain things or how I process it, I guess. But I'm definitely not going to put my thumb on the scale, no."

The prosecutor asked prospective jurors if anyone was concerned about "only hearing from law enforcement" and whether they would not be able to put aside "any preconceived notions or issues they've heard or had with law enforcement[.]" Ms. G. responded, "I feel like I would" and further explained: "Yeah. I say that just because I'm a person of color. The defendant is a person of color. And the East Bay had . . . very recent cases with law enforcement of not being truthful or being completely dishonest. The FBI just raided them and all kinds of things. *So it's very hard . . . to trust.* I've been following that story [regarding the Antioch Police Department.[2]] *So it's hard to think that that's the only people we're going to hear from and really believe what they have to say.* [¶] . . . [¶] . . . I've obviously grew up in a community of color and there is so many instances. So that, to me, would be very hard for me to just listen to law enforcement." (Italics added.)

_____

[2] Defense counsel later made a record, without objection or clarification from the prosecutor, that the scandal involving the Antioch Police Department was "directly tied to racial profiling and to officers engaging in discriminatory behavior."

The prosecutor asked Ms. G., "Would you be judging the actions of some of the people at Antioch Police when you're considering that this is from Brentwood police in this case? Would you be thinking about that?" She answered, "I think the question would be would it be hard for me to separate. I know how those circles run, how they all know each other. *It would just be -- yeah, hard to hundred percent trust what they have to say*." (Italics added) The prosecutor followed up: "And so then do you think that you would be able to assess the credibility of these officers and be fair to them just like any other witness?" Ms. G. answered, "*I don't know*. Yeah. That's the hard part. Normally, I would. I would give everybody the benefit of the doubt; but just . . . . Me, personally, yeah, we just personally had a recent incident with a friend that was murdered and law enforcement involved so . . . [¶] . . . [¶] . . . [t]here is just *a lot of that I think around that is making it hard for me to just a hundred percent trust* what they have to say." (Italics added.) Ms. G. also indicated she was frustrated that the investigation of her friend's death, in Oakland or Berkeley, had been ongoing for almost two years without a trial. The prosecutor asked Ms. G., "So you don't think you could assess [an officer's] credibility fairly?" She answered, "*No*. I don't think so, no." (Italics added.)

The trial court later asked prospective jurors, including Ms. G., to reflect on the fairness of assuming everyone in a particular group, such as law enforcement, either knows one another or agrees. At this juncture, Ms. G. assured the court that is unfair and "understand[s] that[] it . . . doesn't affect the entire group." She continued: "I get that. . . . I think what sparked this thought and [it] may be a little unfair [is that] this trial may not be right for me because [law enforcement is] the only people that we're going to hear from, and there is no equal playing field. [¶] I guess [the prosecutor] was using the analogy of the 50-yard line, and so to think we're just going to hear from one side and not the other I think -- again, I don't know, right, because I haven't heard

9

the evidence. [¶] . . . [¶] . . . But -- yeah. I completely agree with you. I don't want to have that bias against a whole group of people, and I don't have any issues [with] police officers, you know." Ms. G. later explained, "I don't want to have mistrust, but in my experience and most recently and also where I am in my life *there is a little bit of mistrust* so that I had to be honest with that, and . . . *I don't know that I'm going to* [*start a law enforcement witness*] *at the 50-yard line*." (Italics added.) She explained this was "because of what [she] ha[s] been through."

The trial court then read prospective jurors the standard instruction on evaluating witness credibility (CALCRIM No. 226), and Ms. G. said this was helpful. The trial court asked Ms. G., "So with all of that in mind and . . . now that I have read that instruction, does that help at all with you being able to set [your experiences] aside[?] . . . [¶] . . . [¶] . . . And you think you can [be fair]?" Ms. G. responded, "Yes."

The prosecutor moved to excuse Ms. G. for cause, explaining his belief that she was biased against law enforcement due to her background. The trial court denied the motion, citing Ms. G.'s response—after their colloquy regarding CALCRIM No. 226—that she could be fair.

When the prosecutor exercised a peremptory challenge to excuse Ms. G., defense counsel objected, citing section 231.7. The prosecutor stated his reasons: "I'll point out . . . Ms. [G.] is not part of any group similar to either party. Her group or class has no relevance to this case. *The only relevant statements that she did make that were of concern to me and the reason for my challenge are that I talked to her at length about law enforcement and whether she would be able to be fair to law enforcement witnesses.*

"Again, this is a case, for the record, that is solely dependent on law enforcement actions and testimony, and I also gave her multiple opportunities yesterday in different ways of

10

telling me that she could be fair and not let her biases enter into the picture when she was evaluating witness credibility. *She repeatedly said she didn't think she could be fair*, *and that was based on her concern* [regarding the Antioch Police Department], that she has -- either had experience or heard about.

"She believes them all to be part of a small group and wouldn't be able to set that aside to be a fair juror in this case. She also -- when she was talking about the sexual assault subject matter, she did say that she is not a person to put a thumb on a scale and continued, but she is concerned about how it may sway her. So our expressing doubt both as to her about to be a fair juror related to sexual assault.

"And then, again, when it came to assessing law enforcement witnesses, again, I know that then this morning [the court] had an at-length conversation with her advising her of assessing witness credibility, and she did say she would follow it or thought she could follow it; however, I don't think that it can be just disregarded all of the long conversation I had with her just yesterday when the topic was brought up, a lot of the information brought up by her was organic. She brought it up herself all of concerns she had."

"I did not, you know, really ask specifically about those issues that she was bringing up. I just generally asked [would] there be any concern about a case with law enforcement witnesses, and she volunteered a lot of that information. [¶] And so due to that, those are the reasons for my challenge." (Italics added.)

Defense counsel indicated that a juror's distrust of, or negative experiences with, law enforcement was a presumptively invalid reason for a peremptory challenge, under section 231.7, and argued the prosecutor had not rebutted the presumption by clear and convincing evidence. Defense counsel also reiterated that Ms. G. was a woman "cognizable as [L]atin[a] [and] self-

11

described as a person of color on the record." In response, the prosecutor asserted: "I just want to point out I specifically did not give the reason that just due to an expression of distrust or belief of concern about law enforcement those are not my reasons. My reasons were very specific to witness evaluation and being a fair juror in the case." The trial court denied the defense objection without explanation.

**3.**

Alston claims the trial court erred by failing to make any findings or to set forth its reasons for denying the defense objection to the peremptory challenge of Ms. G. We agree that the trial court erred and that this error alone requires reversal.

The People concede that the trial court did not make any findings or explain its reasons and appear to admit that, if the prosecutor's stated reasons for challenging Ms. G. were presumptively invalid, the trial court did not properly comply with statutory requirements. The People only claim that the prosecutor's reasons for challenging Ms. G. did not include a presumptively invalid reason.

This misses the point. Even if we assume (for the sake of argument) that the People are right that the prosecutor did not rely on any presumptively invalid reason or that any presumption of invalidity was overcome, the trial court was nonetheless required to consider the prosecutor's reasons, in light of the totality of the circumstances, to decide whether it was substantially likely a reasonable person would consider race to have been a factor in the prosecutor's challenge, and to *explain the reasons for its ruling on the record.*" (§ 231.7, subd. (d)(1), italics added; see *Jimenez, supra,* 99 Cal.App.5th at p. 541 ["[o]nce the court has determined that the party seeking to exercise the peremptory challenge has overcome the presumption of invalidity as to a stated reason, the court may consider that stated reason in the section 231.7, subdivision (d)(1) analysis as

12

to whether it is substantially likely that a reasonable person would consider that race was a factor in the challenge"]; *Ortiz, supra*, 96 Cal.App.5th at pp. 804-805.)

Moreover, section 231.7, subdivision (d)(3) provides circumstances the trial court may consider in evaluating the reasons given for a peremptory challenge—including whether the objecting party is a member of the same perceived cognizable group as the challenged juror, as well as whether the alleged victim or witnesses are not members of that group. (§ 231.7, subds. (d)(3)(A)(i)–(iii).) Trial courts may also consider "whether the party exercising the peremptory challenge failed to question the prospective juror about the concerns later stated by the party as the reason for the peremptory challenge" (*id.* subd. (d)(3)(C)(i)), and "[w]hether other prospective jurors, who are not members of the same cognizable group as the challenged prospective juror, provided similar . . . answers but were not the subject of a peremptory challenge by that party." (*Id.* subd. (d)(3)(D).)

Here, the trial court did not state *any* reasons for its ruling, much less mention any of the circumstances listed above or indicate why an objectively reasonable person would not view perceived membership in any cognizable group as a factor in the prosecutor's use of the peremptory challenge. (See § 231.7, subd. (d)(1).) The trial court cannot satisfy the statutory mandate to explain its reasons on the record by saying nothing. (See § 231.7, subds. (d), (j).)

Additionally, section 231.7, subdivisions (e) and (f) applied because the prosecutor cited a presumptively invalid reason—Ms. G's distrust of law enforcement. (§ 231.7, subd. (e)(1).) The prosecutor attempted to rebut the presumption by arguing that the reason was unrelated to racial bias but instead was based specifically on Ms. G's own bias—the prosecutor suspected she would be unable to fairly judge a law enforcement witness's

13

testimony. A prospective juror's suspected bias is an appropriate reason to exercise a peremptory challenge—if the challenging party's concerns are "specific to the juror" and unrelated to the challenging party's own "conscious or unconscious bias" (stereotypes). (§ 231.7, subds. (e), (f); *Jimenez, supra*, 99 Cal.App.5th at p. 544, fn. 3; see *People v. Rhoades* (2019) 8 Cal.5th 393, 435; *In re Boyette* (2013) 56 Cal.4th 866, 888-889 [" ' "[d]emonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges" ' "].)

The record here may support a finding—*had it been made*—that the prosecutor's presumptively invalid reason was "unrelated to [the prosecutor's] conscious or unconscious bias and [was] instead specific to the juror and bear[s] on that juror's ability to be fair and impartial in the case." (§ 231.7, subd. (f); see *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17-18; *Jimenez, supra*, 99 Cal.App.5th at pp. 541-544.) Section 231.7 "does not limit our ability to consider undisputed facts in the record that are relevant to the prosecutor's reason or the court's finding during our de novo review." (*Jimenez*, at p. 544.) However, the circumstance that distinguishes this case from *Gonzalez* and *Jimenez* is that the trial court, here, did *not* make any such finding. (*Gonzalez*, at pp. 12, 17-18; *Jimenez*, at pp. 542-544.) The statute prescribes how the court must analyze this issue and requires clear and convincing evidence. (§ 231.7, subds. (e), (f).)

Without any explanation or findings from the trial court, we cannot conduct our review. Section 231.7 forbids us from imputing findings that the trial court did not expressly state on the record (§ 231.7, subd. (j); see *Jimenez, supra*, 99 Cal.App.5th at p. 544 [limiting review to trial court's express findings]), and the Legislature has instructed us to broadly construe the statute to further the elimination of group stereotypes and

14

discrimination (conscious or otherwise) in the exercise of peremptory challenges. (Stats. 2020, ch. 318, § 1, subd. (c).) In any case, the "totality of the circumstances" inquiry, required under section 231.7, subdivision (d), involves factual determinations that appellate courts are ill suited to decide because we cannot assess the tone or credibility of attorneys or prospective jurors. (See *People v. Hinojos* (2024) 110 Cal.App.5th 524, 543 ["[s]ection 231.7 begins with fact gathering" but "ultimate question of whether 'in light of the totality of the circumstances . . . there is a substantial likelihood that an objectively reasonable person would view race . . . as a factor in the use of the peremptory challenge' (§ 231.7, subd. (d)(1)) is an application of a legal standard to facts"].)

To be sure, courts have held that section 231.7 does not require a trial court to explain its reasons "in any particular manner or at any particular level of detail." (See, e.g., *People v. Garcia* (2025) 115 Cal.App.5th 92, 105-106.) We have no need to decide how much explanation would have sufficed. It is enough to say that *some* explanation is required. (See § 231.7, subds. (d), (j).)

Although the parties do not cite it, we observe that *Ortiz, supra,* 96 Cal.App.5th 768 held that an appellate court may independently review whether the explanation requirement, found in section 231.7, subdivision (g)(2),[3] is satisfied despite the trial court having made no express finding on that issue. (*Ortiz*, at pp. 803-804.) We need not consider whether *Ortiz* was correctly decided because, assuming that it was, we see no reason

---

[3] Section 231.7, subdivision (g), provides that certain demeanor-based reasons for a peremptory challenge are presumptively invalid. Section 231.7, subdivision (g)(2) provides that the presumption may be rebutted if "the trial court is able to confirm" the asserted behavior and counsel offering the reason "explain[s] why the asserted demeanor . . . matters to the case to be tried."

to further extend that reasoning to excuse what happened here—when the trial court said absolutely nothing on the distinct questions presented by subdivisions (d), (e), and (f) of the statute. The trial court, in *Ortiz*, stated reasons for its ruling as required by section 231.7, subdivision (d). (*Ortiz*, at pp. 789-790, 803-804.)

In sum, we agree with Alston that, on this record, the trial court erred by overruling Alston's section 231.7 objection without providing any explanation. The People do not dispute that the error was prejudicial. (§ 231.7, subd. (j).) We therefore reverse the judgment and remand the matter for a new trial. We need not address Alston's remaining arguments.

**B.**

We only briefly address, to guide the court on remand, Alston's claim that the trial court erred by refusing to instruct the jury, with CALCRIM No. 3408, on the defense of entrapment. He is wrong.

A court is required to instruct the jury on entrapment *if* substantial evidence supports the defense. (*People v. Watson* (2000) 22 Cal.4th 220, 222.) "[T]he test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a normally law-abiding person to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect--for example, a decoy program--is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.' " (*Id.* at p. 223, italics omitted.)

16

The parties agree that the relevant test here is whether the actions of police would make commission of the crime unusually attractive to a normally law-abiding person. (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690.) "Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (*Id.* at p. 690.) The inquiry is focused primarily on the officer's conduct, but relevant circumstances also include "the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission." (*Ibid.*)

Here, there is no evidence that Agostinho (or his female colleague) did anything that would have cajoled or induced a normally law-abiding adult to send a pornographic video to a 13-year-old or to arrange a sexual rendezvous despite knowing Jimena's age. (See *People v. Fromuth* (2016) 2 Cal.App.5th 91, 111 [instruction on entrapment not required, in prosecution for arranging meeting for lewd purposes with person believed to be minor, because there was no evidence officer posing as 15-year-old girl engaged in conduct that could have persuaded normally law-abiding man to arrange to meet for sex after her age was known].) Law enforcement did nothing more than present Alston with an opportunity to commit the offenses. It was Alston who, without cajoling or enticement, suggested meeting up with Jimena within one minute of learning of her age and, approximately 15 minutes later, in response to receiving photos of her fully clothed, sent her a pornographic video. "[A] person who arranges to have sex with a child when given the opportunity is an opportunistic sexual predator, not a normally law-abiding person." (*Ibid.*)

The trial court did not err by declining to instruct on entrapment.

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial.

BURNS, J.

WE CONCUR:

JACKSON, P. J.
CHOU, J.

*People v. Alston* (A169256)

Superior Court of Contra Costa County, No. 012301776, The Hon. Jennifer D. Lee, Judge.

Carlo Andreani, under appointment by the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, and Molly A. Smolen, Deputy Attorney General, for Plaintiff and Respondent.